Argued and submitted February 5, reversed and remanded July 7, 1999

# STATE OF OREGON,
*Respondent,*

*v.*

# MANUEL ROCHA-RAMOS,
*Appellant.*

(97P3137; CA A98765)

985 P2d 217

Lester E. Seto argued the cause and filed the brief for appellant.

Laura S. Anderson, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judge.

EDMONDS, P. J.

---

\* Deits, C. J., *vice* Warren, P. J., retired.

## EDMONDS, P. J.

Defendant appeals from a judgment of conviction for unlawful possession of a controlled substance, ORS 475.992(4)(b) (1995), that was entered after a stipulated facts trial. He assigns error to the trial court's denial of his pre-trial motion to suppress evidence.[1] We reverse.

■ In its order denying defendant's motion to suppress, the trial court made the following findings of fact and conclusions of law:

"On April 4, 1997, Salem Police Officers Beaver and Lance were conducting a drug investigation and went to the defendant's apartment.[2] The door to the apartment was open. The officers asked for permission to come in and were given permission to enter the apartment. Almost immediately the defendant said he had to use the bathroom. The officers asked him if he could wait. The defendant was observed to remove some plastic from his pocket and place it in his mouth. Officer Beaver testified that she knows that drugs are often packaged in plastic baggies and that she was concerned that the defendant was trying to swallow evidence. She seized the baggie. The defendant was handcuffed. The defendant again asked to use the bathroom and [O]fficer Beaver searched his person and discovered a bag of white powder in the defendant's shirt pocket. Officer Beaver testified that she was concerned that if the defendant was allowed to go to the bathroom he might be able to destroy evidence or retrieve a weapon or a handcuff key. There were no male officers available to accompany the defendant to the bathroom. The baggy [sic] and powder were seized and later tested positive for cocaine. The defendant was allowed to use the bathroom by himself. Upon his return[,] he was asked for consent to search the apartment for drugs. He was read a consent to search card and voluntarily gave consent. Officer Lance located a scale and two

---

[1] The motion sought to suppress "all observations of the accused, the stop and/or seizure of the accused, statements, admissions and/or confessions of the accused, search of the person and residence of the accused, items seized from the defendant, and/or the premises and the seizure of any and all evidence obtained as [a] result thereof, and the fruits thereof[.]"

[2] The officers had no warrant and testified that they went to defendant's apartment based on a tip that there was drug activity there.

firearms in the defendant's bedroom. These were seized. A quantity of cash and two pagers were also seized.

"The officers were given permission to enter the defendant's apartment. When the defendant was observed putting a plastic bag in his mouth[,] the officer had probable cause to search the defendant's person and his residence for evidence of drug activity. This would include searching for scales, weapons, money and pagers as well as drugs. The evidence was in danger of being destroyed by the defendant. The search of defendant's person and seizure of the cocaine was lawful. In addition, the officer asked for and received valid consent from the defendant prior to searching his apartment. The search of defendant's room and seizure of the two rifles was lawful."

If there is constitutionally sufficient evidence to support the trial court's findings of historical fact regarding a ruling on a motion to suppress, then we are bound by them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). If such findings "are not made on all pertinent issues and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion." *Id.* Based on those findings, we make our own determination of law. *Id.*

■ Defendant first argues that the officers' initial entry into the apartment was unlawful because there was no consent for them to enter. In the alternative, he asserts that, even if the officers had valid consent to enter the apartment, their unlawful seizure of him by refusing to permit him to use the bathroom exceeded the scope of that consent. The state counters:

"The trial court properly denied defendant's motion to suppress evidence. The police officers entered defendant's apartment with his voluntary consent. Once inside, the officers engaged in mere conversation with defendant. Defendant created probable cause to arrest him when he attempted to swallow a baggie containing drug residue which he took from his pocket. The subsequent search of defendant's person was incident to his arrest, and for the purpose of officer safety. The subsequent search of defendant's apartment was conducted with defendant's valid consent."

We begin by addressing the issue of whether defendant consented to the officers' entry into his apartment. The trial court found that, when the officers arrived at defendant's apartment in the course of a drug investigation, the door was open and that they asked for and were granted permission to enter. Because the trial court's finding that consent was granted is supported by evidence in the record, we are bound by it.[3] *State v. Larson*, 141 Or App 186, 196, 917 P2d 519, *rev den* 324 Or 229 (1996). Based on the trial court's findings, we conclude that defendant voluntarily consented to the officers' entry into the apartment.

We now turn to the issue of the lawfulness of the officers' subsequent actions after entering the apartment. In *State v. Holmes*, 311 Or 400, 406-07, 813 P2d 28 (1991), the Supreme Court identified three types of police-citizen encounters and described the justification necessary to support each type.

"First, a police-citizen encounter without any restraint of liberty (*e.g.*, mere conversation, a non-coercive encounter) is not a 'seizure' and, therefore, requires no justification. Second, a 'seizure' of a person occurs when a police officer temporarily restrains a person's liberty (a 'stop' under ORS 131.605(5) [(1995)]), justified by reasonable suspicion of the citizen's criminal activity. Third, a 'seizure' of a person occurs upon an arrest, justified by probable cause to believe that the person arrested has committed a crime." *Holmes*, 311 Or at 407 (citations omitted; footnotes omitted).

The Holmes court explained that

"a 'seizure' of a person occurs under Article I, section 9, of the Oregon Constitution (a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) whenever an individual

---

[3] Defendant also argues that "[c]onsent elicited from individuals who do not claim authority to grant consent is not sufficient to authorize entry into the residence." In support of that argument, defendant argues that "the police acknowledge that they believed that the actual tenant of the apartment was not present." Defendant's argument is not well taken because the trial court found and the record indicates that defendant lived in the apartment. *See State v. Beylund*, 158 Or App 410, 417, 976 P2d 1141 (1999) (reasoning that "the consenting person's relationship to the premises or items to be searched can be proven by facts established after the search").

believes that (a), above, has occurred and such belief is objectively reasonable in the circumstances." 311 Or at 409-10.

Thus, the determination of whether a restraint of a person's liberty constitutes a seizure under Article I, section 9, of the Oregon Constitution, depends on the facts of each case. For instance, in *State v. Johnson*, 105 Or App 587, 590-91, 805 P2d 747 (1991), we held that, when an officer requested that the defendant step out from behind a bush and walk 15 feet toward the officer, he altered the defendant's course of travel and converted a noncoercive encounter into a stop by his show of authority.

■ Here, defendant argues that he was unlawfully seized when the officers first refused to allow him to use the bathroom and before the officers observed him placing a baggie in his mouth. The trial court found:

"Almost immediately the defendant said he had to use the bathroom. The officers asked him if he could wait."

In addition, Officer Beaver testified at the hearing on the motion to suppress:

"Q. * * * And he was sitting on the couch. And did he ask to use the bathroom?

"A. Yes. Right after we entered—he was sitting on the couch—he stood up and asked to use the restroom.

"Q. What did you say?

"A. Both Officer Lance and I asked him if he could wait, asked him if he would sit down.

"Q. Okay. And then he sat back down?

"A. That's correct."

On cross-examination, Officer Beaver testified:

"Q. * * * How did you stop him from using the bathroom?

"A. What I had done is he got[ ] up when I had got[ ] into the house. It was right after I entered. So I just stood in the hallway and asked him to sit down. This took up all of about a short time. And I said, you know, can you sit down? And he sat down. I didn't physically touch him in any way.

"Q. Did you physically interpose yourself in the direction he was going?

"A. Yeah."

Based on Beaver's uncontradicted testimony,[4] we conclude that defendant was stopped within the meaning of Article I, section 9. After defendant stood up and asked to use the bathroom, the officers not only asked him to sit down, but Beaver blocked his route of travel. Consequently, Beaver's show of authority interfered with defendant's freedom of movement similar to what occurred in *Johnson*.

 Defendant contends that the seizure of his person at that time was unlawful. A seizure may be justified by reasonable suspicion of criminal activity. ORS 131.615(1) (1995).[5] "Reasonable suspicion" is defined by ORS 131.605(4) (1995) to mean "that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts as authorized in ORS 131.605 to 131.625." In other words, the officer must subjectively believe that the stopped individual has committed a crime, and that belief must be objectively reasonable. *State v. Belt*, 325 Or 6, 11, 932 P2d 1177 (1997). An officer has reasonable suspicion if he or she "is able to point to specific and articulable facts that give rise to a reasonable inference that a person has committed a crime." *Ehly*, 317 Or at 80. Here, the state does not point to any circumstances that would indicate that the officers had a reasonable suspicion based on articulable facts that defendant was committing a crime when he attempted to use the bathroom. Rather, it argues that any restraint was constitutionally insignificant. We disagree. The prevention of defendant from using the bathroom in his own residence after he invited the officers inside is a significant restraint on his liberty. We hold that, when the officers prevented defendant from using the bathroom without a

---

[4] The testimony of Lance and defendant is generally consistent with Beaver's testimony about impeding defendant's path.

[5] ORS 131.615(1) (1995) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."

reasonable suspicion that criminal activity had occurred, they violated Article I, section 9.

■ The remaining issue is whether the officers exploited the illegal stop to obtain the evidence that defendant seeks to suppress. The trial court concluded that "[w]hen the defendant was observed putting a plastic bag in his mouth[,] the officer had probable cause to search the defendant's person and his residence for evidence of drug activity." The trial court did not consider the issue of whether the officers' observations constituted an exploitation of their illegal stop. On remand, the trial court must decide that issue and make the appropriate rulings that follow as a legal consequence. *See, e.g., State v. Davis*, 295 Or 227, 243, 666 P2d 802 (1983) (holding that suppression is necessary when "probable cause for the arrest stems solely from [an] illegal entry and subsequent illegal search"); *see also State v.*

*Morton*, 326 Or 466, 953 P2d 374 (1998) (reasoning that the illegal arrest could not be separated from the dropping of the container); *State v. Knox*, 160 Or App 668, 679-80, 984 P2d 294 (1999) (reasoning that defendant's "alleged deposit of the pouch [of contraband] in the patrol car was a product of his own volition, and its seizure was not an exploitation of the [illegal] search by the police in the parking lot").

Reversed and remanded.