Argued and submitted October 21, South Medford High School, Medford, reversed and remanded November 26, 2003

STATE OF OREGON,
*Respondent,*

*v.*

SEVEART LYNN MCMILIAN,
aka Justin Ray Pearson,
*Appellant.*

96C-20672, 00C-54523;
A115696 (Control), A115697
(Cases Consolidated)

80 P3d 538

Susan F. Drake, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter A. Ozanne, Executive Director, Office of Public Defense Services.

David J. Amesbury, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Brewer, Presiding Judge, and Schuman and Ortega, Judges.

BREWER, P. J.

**BREWER, P. J.**

Defendant appeals his convictions for two counts of identity theft, ORS 165.800, and a judgment revoking his probation in another case based on his commission of the identity theft crimes. In particular, he asserts that the trial court erred by (1) denying his motion to suppress evidence derived from a search of his person; (2) trying him on stipulated facts in the criminal case without first obtaining a written waiver of his right to a jury trial; (3) failing adequately to inquire concerning his request for new counsel; and (4) determining that he had violated his probation based on his commission of the identity theft offenses. We reverse and remand.

Defendant was convicted in 1996 of two counts of first-degree forgery and one count of racketeering, and he was placed on bench probation for those offenses. Defendant's probation on the forgery convictions expired in 1998, but he was scheduled to remain on probation for the racketeering conviction until September 17, 2001.

On October 29, 2000, defendant was stopped by a police officer for a traffic infraction. Defendant left his vehicle to speak to the officer, who requested his identification. Defendant gave the officer his true name, but he stated that he had no identification and that he thought his driver's license was suspended. Defendant appeared nervous and fidgety. He also was sweating profusely despite the cold weather, he was moving his hands a lot, and he repeatedly put his hands in his pockets. The officer smelled the odor of methamphetamine coming from defendant's person. Because of defendant's behavior and his inability to produce identification, the officer believed that defendant might be armed. Concerned for his safety, the officer asked defendant if he could search him for weapons, and defendant consented.

The officer patted defendant down and checked inside his pockets. During that search, the officer found a checkbook inside defendant's jacket pocket. He opened the checkbook and found checks in the name of Anthony Meeker, as well as a driver's license bearing Meeker's name but displaying defendant's photograph. Defendant told the officer

that the license was a fake. The officer detained defendant in the back of his patrol car based on defendant's failure to present a valid driver's license and his possession of a forged license. After advising defendant of his *Miranda* rights, the officer asked defendant how he had paid for groceries that the officer had seen in the back seat of defendant's car. Defendant stated that he "just paid for them." While the officer was talking to defendant, he saw a checkbook in the back of the patrol car. The officer picked up the checkbook and noticed that it contained checks in the name of "Correct Construction, Inc." The officer then called the store where defendant had purchased the groceries and was told that the purchaser had paid for them with a check in the name of Kevin Anderson. From that information, the officer concluded that the groceries were stolen.

Because defendant had stated that his driver's license was suspended, the officer impounded defendant's vehicle. Before having it towed, the officer inventoried the vehicle. During the inventory, the officer found a wallet that contained a driver's license in the name of Kevin Anderson but that, once again, displayed defendant's photograph. That license listed the same address as the checks for Correct Construction, Inc. As the officer moved the back seat forward to retrieve the groceries, he saw another checkbook on the floor of the vehicle. The officer opened that checkbook and found checks and a driver's license inside bearing the name of Richard Arnold. The license also displayed defendant's photograph.

Defendant was arrested and charged with two counts of identity theft, based on his alleged use of the identifications belonging to Anderson and Arnold. He was not charged with any offense pertaining to his possession of the checkbook and identification that the officer found in his jacket pocket. The state also initiated a show cause proceeding to revoke defendant's probation on his previous racketeering conviction. The show cause motion alleged four grounds for revocation: (1) the commission of new crimes; (2) failure to obey all laws; (3) failure to pay court-ordered financial obligations; and (4) failure to benefit from probation.

The trial court appointed counsel for defendant in the criminal and probation violation cases. At his arraignment, defendant requested new counsel, stating that his current counsel had "tried to coerce [him] into taking guilty pleas." The trial court replied that defendant's current attorney was "appointed to represent [him], and that's what he's doing." The court then proceeded to the next case on the docket.

Defendant moved, in both the criminal case and the probation violation proceeding, to suppress the evidence seized from his person and vehicle following the traffic stop. The trial court scheduled for the same date a hearing on the motion to suppress, a jury trial in the criminal case, and a probation violation hearing in the racketeering case. A combined evidentiary hearing was held on the probation violation charges and the motion to suppress. The state adduced evidence that defendant had committed the identity theft crimes with which he currently had been charged. The court found that defendant had violated his probation by committing the same type of crime for which he had been placed on probation and, therefore, that he had not benefitted from probation. The court made no findings concerning the allegation that defendant had failed to pay his financial obligations.

The court denied the motion to suppress. The court then held a stipulated facts trial on the identity theft charges, and it convicted defendant of those offenses. The record does not reflect that defendant waived in writing his right to a jury trial.

At sentencing, the court revoked defendant's probation on the racketeering conviction, and it sentenced him to 60 months' imprisonment and 36 months' post-prison supervision. In addition, the court sentenced defendant to 13 months' imprisonment on each of the identity theft convictions, concurrent to one another, but consecutive to the probation revocation sentence.

Defendant appeals from his convictions in the identity theft case and the judgment revoking his probation in the racketeering case. To recapitulate, defendant asserts that the trial court erred by denying his motion to suppress on the ground that the search of the checkbook found in his jacket

was unlawful; trying him on stipulated facts without first obtaining a written waiver of defendant's right to a jury trial; failing to adequately inquire concerning his request for new counsel; and determining that he had violated his probation based on his commission of the new identity theft offenses. We consider those arguments in turn.

■■ Defendant first contends that the warrantless seizure and search of the checkbook located in his jacket pocket violated Article I, section 9, of the Oregon Constitution because (1) the officer did not have valid safety concerns when he requested consent to search defendant for weapons and, thus, the officer improperly extended the scope of the traffic stop; and (2) even if the request for consent to search was justified, the checkbook did not appear to contain a weapon and, therefore, should not have been seized or opened. The state concedes that "by opening the checkbook and examining its contents, [the officer] exceeded the scope of defendant's consent." Although that concession does not precisely track either of defendant's specific arguments, we understand it to accept defendant's second argument, namely, that, because defendant consented only to a weapons search, even if the officer had valid safety concerns, he was not entitled to seize and open the checkbook because it did not appear to contain a weapon.

■ ■ We accept the state's concession.[1] A warrantless search violates Article I, section 9, unless it is justified by an exception to the warrant requirement. Consent is an exception, *State v. Ready*, 148 Or App 149, 152-53, 939 P2d 117, *rev den*, 326 Or 68 (1997), as is officer safety, *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987). The consent exception provides no independent justification for the seizure and search of the checkbook found in defendant's jacket because defendant consented only to a weapons search. The sole issue, therefore, is whether the seizure and search of that checkbook were justified by the officer safety exception.

■ An officer is permitted to take

"reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer

---

[1] Our acceptance of the state's concession makes it unnecessary to consider defendant's first argument.

develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present."

*Bates*, 304 Or at 524. The seizure and search of an item pursuant to an officer safety search must be supported by both an objective basis to believe and a subjective belief that the item contains a weapon. *State v. Wiggins*, 184 Or App 333, 340-41, 56 P3d 436 (2002). The checkbook found in defendant's pocket clearly was not a weapon, and there was no evidence that the officer believed that it could or did contain a weapon. Because the seizure and search of the checkbook were not supported by the officer safety exception, and defendant did not consent to a search of his person other than for weapons, the seizure and search violated defendant's rights under Article I, section 9. Accordingly, the trial court erred in denying defendant's motion to suppress the checkbook found in defendant's jacket pocket.

■   The question remains whether the proper suppression remedy is outright reversal of defendant's convictions or reversal and remand for a new trial. Defendant argues that the proper remedy is outright reversal because the discovery of the Anderson and Arnold identifications—the subjects of his identity theft convictions—resulted from the exploitation of the unlawful seizure and search of the checkbook found in defendant's jacket. *See State v. Rodriguez*, 317 Or 27, 40, 854 P2d 399 (1993) ("Exploitation occurs when police take advantage of the circumstances of their unlawful conduct to obtain the consent to search."). The difficulty is that the trial court did not address the issue of exploitation in making its suppression decision. That issue is for the trial court's consideration in the first instance. *See State v. Rocha-Ramos*, 161 Or App 306, 313, 985 P2d 217 (1999) (stating that, "[t]he trial court did not consider the issue of whether the officers' observations constituted an exploitation of their illegal stop. On remand, the trial court must decide that issue and make the appropriate rulings that follow as a legal consequence."). Accordingly, the proper suppression remedy is reversal and remand to the trial court.

We briefly consider defendant's second and third assignments of error, in which he argues, respectively, that

his convictions must be reversed because the trial court failed to obtain a valid written waiver of his right to jury trial and because it failed adequately to inquire into his request for new counsel. With respect to the second assignment, the state concedes that the trial court erred in failing to obtain a written jury trial waiver. *See State v. Lemon*, 162 Or App 640, 986 P2d 705 (1999) (holding that a waiver of the right to a jury trial must be in writing). However, both assignments of error are moot because they can be addressed as necessary should the issues framed by them arise on remand.

■ Defendant's fourth assignment of error is well taken. The state concedes that the trial court appears to have revoked defendant's probation based on his commission of the identity theft crimes that are the subjects of his current convictions. The record supports that concession. The state also concedes that, if those convictions are reversed, the judgment revoking defendant's probation also must be reversed. Again, we agree. The state's proof of identity theft crimes at the probation violation hearing included evidence that we have suppressed, and other new crimes evidence that the state adduced, including evidence pertaining to defendant's use of the Anderson and Arnold identifications, may be the subject of a further suppression hearing on remand. However, as discussed, the state also asserted other grounds for revocation. We therefore remand the probation revocation proceeding to the trial court for reconsideration in light of the reversal of defendant's convictions. *See State v. Brown*, 53 Or App 666, 669, 633 P2d 20 (1981) (holding that, because it appeared that the defendant's robbery conviction was the primary, if not sole, basis for revoking his probation and that conviction was vacated, the case must be remanded to the trial court to reconsider its revocation decision, and if the trial court were to find that the purposes of probation were not being served, it could exercise its discretion accordingly).

Reversed and remanded.