Argued and submitted October 21, 2003, at South Medford High School, Medford, reversed and remanded January 28, 2004

## STATE OF OREGON,
*Respondent,*

*v.*

## JAMES EDWARD BRYANT,
*Appellant.*

### CR0000031; A115305

83 P3d 941

Susan F. Drake, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, State Public Defender, Office of Public Defense Services.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Brewer, Presiding Judge, and Schuman and Ortega, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Defendant was convicted of possession and delivery of methamphetamine, a controlled substance. He appeals the partial denial of his motion to suppress a statement he made to a police officer after the officer found methamphetamine and cocaine in defendant's car. We reverse and remand.

Clackamas County Deputy Sheriff Strangfield saw the car defendant was driving run a red light. Strangfield stopped the car, checked defendant's driver's license, and discovered that his driving privileges were suspended. He then told defendant that his car would be towed and asked him "if there was anything in the vehicle that I might find." Defendant responded that there was methamphetamine in the car's center console. With defendant sitting in the back of the patrol car, Strangfield returned to defendant's car, and in its center console he found a clear tube with a "brown and yellow lumpy substance." He asked defendant if the substance was methamphetamine, and defendant admitted that it was. Strangfield told defendant that he was under arrest and informed him of his *Miranda* rights. Strangfield then returned to defendant's car to continue the search and found an eyeglass case in the glove box. He opened the case. Inside he found several vials of what appeared to be (and, it was later determined, was) cocaine. He returned to the patrol car and asked defendant what he was doing with the drugs. Defendant responded that he was taking the "cocaine and methamphetamine" to a party to share with friends.

Defendant was indicted for possession and delivery of methamphetamine and cocaine. Citing Article I, section 9, of the Oregon Constitution, he moved to suppress all of the evidence seized during the traffic stop, including the drugs found in the car and his statements to Strangfield. The trial court concluded that Strangfield lawfully stopped defendant for a traffic offense, that he lawfully discovered the methamphetamine and the eyeglass case pursuant to an inventory search, but that his opening of the eyeglass case and discovery of the cocaine could not be justified by any exception to the warrant requirement. The court consequently granted defendant's motion to suppress the cocaine and ordered that

any reference to cocaine in defendant's statement be redacted, but admitted the rest of defendant's statement, including his admission that he planned to share the methamphetamine with friends.

Unsatisfied with this partial victory, defendant argued that his statement should be suppressed in its entirety. The entire statement, he reasoned, resulted from Strangfield's exploitation of unlawfully obtained knowledge; without having seen the cocaine in the unlawfully opened eyeglass container, the deputy would not have asked defendant what he planned to do with such a large quantity of drugs. The court, unclear as to the exact content of Strangfield's question to defendant, asked the deputy to testify a second time. Strangfield then related that he "went back again to talk to [defendant] and asked him—because it was a substantially large amount of drugs, the largest amount of drugs that I had come across at that point, and asked him specifically why he had such a large amount of drugs and what was he going to be doing with them." Defendant, according to Strangfield's testimony, told the deputy that "he had a large amount of cocaine and methamphetamine specifically because he was going to a party and he was going to let some friends use some."

After considering Strangfield's testimony, the court concluded again that redacting all reference to *cocaine* from defendant's statement about his plan to share the drugs, but admitting the part of the statement regarding his plan to share the *methamphetamine*, would adequately protect defendant's rights. The court did not directly address defendant's exploitation argument. Subsequently, it dismissed the charges relating to the cocaine and entered conditional pleas of guilty to the possession and delivery of methamphetamine, the latter arguably based at least in part on defendant's statement that he planned to take the methamphetamine to a party and share it. On appeal,[1] defendant does not assign error to the trial court's determination that the methamphetamine was discovered as the result of a lawful inventory search, and the state does not dispute the court's conclusion

---

[1] A defendant who enters a conditional guilty plea may appeal from an adverse ruling on a pretrial motion. ORS 135.335(3).

that opening the eyeglass case was an unlawful search. The sole issue is whether the court erred in admitting any part of defendant's statement. More specifically, the issue is whether Strangfield exploited the unlawful discovery of the cocaine in eliciting from defendant the statement regarding his intention to share all of the drugs with others.

Article I, section 9, requires suppression of evidence obtained after unlawful police conduct if the discovery of the evidence would not have happened but for the unlawful conduct and the discovery results from exploitation of that conduct. *State v. Rodriguez*, 317 Or 27, 33, 854 P2d 399 (1993). Exploitation occurs when police take advantage of their unlawful conduct, for example by using information that the conduct produced to help them obtain the disputed evidence. *See, e.g., State v. Schwartz*, 173 Or App 301, 307-08, 21 P3d 1128, *rev den*, 333 Or 162 (2001) (examining circumstances to determine whether unlawful search led police to focus on or interview the defendant). The defendant has the initial burden of establishing exploitation, that is, of showing a " 'factual nexus' between the unlawful police conduct and the challenged evidence * * *. [I]f a defendant makes that initial showing, then the burden of proof shifts to the government to show that the unlawful conduct has not tainted the evidence[.]" *State v. Johnson*, 335 Or 511, 520, 73 P3d 282 (2003); *see also State v. Cardell*, 180 Or App 104, 117, 41 P3d 1111 (2002).

In the present case, the asserted connection between the unlawful discovery of cocaine and the evidence defendant seeks to suppress lies in causation: defendant contends that only the discovery of the cocaine led Strangfield to ask the question eliciting the evidence defendant now wants to suppress, that is, that without the cocaine, Strangfield would not have been prompted to ask defendant what he intended to do with the drugs. Although the trial court did not make an explicit finding rejecting defendant's causation theory, we presume that the trial court decided the factual issues in a manner consistent with the ultimate conclusion it reached. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Here, in refusing to strike defendant's statement in its entirety, the trial court implicitly found that Strangfield would have asked defendant about his plans for the drugs even if he had

not discovered the cocaine and that therefore defendant failed to meet his burden of proving the requisite factual connection between the cocaine and the statement. As this is a determination of fact by the trial court, we are bound by it unless we conclude there is no evidence to support it, or, as the Supreme Court has recently held, "unless the evidence * * * is such that the trial court as finder of fact could decide a particular factual question in only one way[.]" *Johnson*, 335 Or at 523.

As the parties agree, the record contains no direct evidence of the role that the unlawfully discovered cocaine played in the deputy's decision to ask defendant what he planned to do with the drugs. In the relevant testimony, Strangfield said that, after he discovered both forms of controlled substance, "because it was a substantially large amount of drugs, the largest amount of drugs that I had come across at that point," he "asked [defendant] specifically why he had such a large amount of drugs and what was he going to do with them." That testimony does not indicate if the antecedent to "it" and "them," that is, the "large amount of drugs," is the methamphetamine and the cocaine (as defendant argues) or only the methamphetamine (as the state maintains). Thus, the only evidence in the record concerning Strangfield's motivation is indirect and inferential: when he spoke with defendant after having discovered only the methamphetamine, he did not ask him about his plans for the drugs, but after discovering the cocaine he did. We believe that those undisputed historical facts are sufficient to create an inference that the methamphetamine itself did not provoke the question but that the two substances in combination did.

In opposition to that inference, the state suggests only that

"[w]hen an officer arrests a suspect for drugs, he generally will question him about what he was doing with them. Such an inquiry was all the more likely here given the amount of methamphetamine that Strangfield discovered. Strangfield discovered 13.3 grams of methamphetamine. That is a large amount of drugs, which strongly suggests that defendant was delivering them. It is highly improbable that

Strangfield would not have asked defendant what he was doing with that quantity of drugs."

We find that this speculation, unsupported by any testimony about police practices in general or Strangfield's practices in particular, cannot counter the inference that the statement was causally connected to the discovery of the cocaine. Put another way, the inference that the trial court implicitly drew from the facts—that Strangfield would have asked defendant what he planned to do with the drugs even if he had not found the cocaine—finds *no* support in the record. *No* direct evidence in the record supports the state's theory or the trial court's finding, and all of the inferential evidence that derives from the record supports defendant's theory. We therefore conclude that the trial court erred in finding that the statement did not result from exploitation of the unlawfully seized cocaine, and that it should have suppressed the statement in its entirety.

Reversed and remanded.