Argued and submitted March 31, 2003, reversed and remanded April 28, 2004

## STATE OF OREGON,
*Respondent,*

*v.*

## TREVOR JEREMIAH GROVER,
aka Trevor Ross-Grover,
*Appellant.*

C 000533711; A111852

90 P3d 8

Robin A. Jones, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Acting Executive Director of Public Defense Services.

David J. Amesbury, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Schuman, Judge.*

DEITS, C. J.

---

* Schuman, J., *vice* Kistler, J., resigned.

.

## DEITS, C. J.

Defendant appeals a judgment of conviction for possession of a controlled substance. ORS 475.992. He assigns error to the trial court's denial of a motion to suppress. The evidence that he seeks to suppress consists of (1) statements that he made to an officer concerning his possession of methamphetamine and (2) methamphetamine found on his person by the officer. We reverse and remand.

In May 2000, at around 9:45 a.m., Officer Ronald Cash went to an apartment unit in Portland in response to reports of suspected drug activity at and near the apartment. He was invited inside by a woman who answered the apartment door. Cash had been at this same apartment a week earlier and had talked with a person who he knew to be an admitted drug user. The woman who answered the door told Cash that he could look around the apartment, but that she and her mother were the only persons in the apartment. Cash did so, accompanied by the woman. He entered a bedroom and eventually found two other occupants of the residence, one male and one female, and saw drug paraphernalia and drugs in plain sight. Cash recognized the items as contraband. He advised the three occupants of their *Miranda* rights and began to interview them.

As Cash began to interview the woman who had invited him into the apartment, he heard tapping on the bedroom window and someone calling a name. Cash testified that he could see defendant through the window and that he recognized him from previous encounters. Cash told defendant to "[c]ome around to the front door." The parties dispute whether defendant knew that this instruction came from a police officer. In any event, defendant complied. Defendant entered the apartment and walked down a hallway toward the bedroom where Cash was. Cash testified that, at this point, he was concerned for his safety because of the number of persons in the house, the recent discovery of drugs, and a recent report by defendant's mother that defendant had a weapon and had been threatening to kill her and himself. As defendant walked down the hall, Cash drew his gun and pointed it at defendant. Cash said, "I want you to raise your

hands up. Keep your hands away from your body. I don't know whether you're armed or not, but keep your hands away from your body." After defendant raised his hands, Cash reholstered his gun. He instructed defendant to "turn around and go down on his knees." Cash then handcuffed defendant.

Following that action, Cash asked defendant some questions. The precise content of those questions is disputed by the parties. The state asserts on appeal that Cash asked defendant only whether he could pat him down and whether he had any weapons. Both defendant and Cash testified, however, that Cash also asked him whether he had any narcotics. According to Cash, defendant responded to his inquiry by giving him permission to pat him down and telling him that he had methamphetamine in his left coat pocket. Defendant testified that he said nothing in response to the officer's questions. Cash proceeded with a patdown search, and felt a hard object in defendant's left coat pocket. He removed the object, a "kind of a light, camel light tin can pack, cigarette size [containing] one clear plastic bindle with three smaller bindles * * * and then a larger clear plastic bindle with a small bindle inside * * *." The bindles contained methamphetamine. Cash then read defendant his *Miranda* rights.

Cash also testified that he was familiar with defendant from several previous encounters.[1] He characterized the "first two or three contacts" as "pretty rough, but after that, [defendant] understood that we—we really care." Cash described defendant's demeanor during this arrest as "very cooperative." He characterized his previous law enforcement contact with defendant as "[m]inor things; possession of marijuana of less than an ounce, you know, cigarettes." However, as noted above, a week or two before the incident at issue in this case, Cash was involved in a call initiated by defendant's mother. She had reported that "[defendant] in fact had a weapon, and that he was going to kill himself and his mother." Responding to the call, Cash and others found

---

[1] When asked to state the "approximate" numbers of contacts with defendant, that "don't even have to involve criminal activity," Cash responded, "Eight to ten." Defendant disputes the number of past contacts: "I've only had contact with Officer Cash about one time."

the house in disarray, but they did not find defendant at the location.

Before trial, defendant moved to suppress all evidence obtained as a result of the alleged illegal search and seizure of the defendant on the grounds that (1) his confession was obtained as a result of unlawful interrogation and (2) the methamphetamine was obtained as a result of an unlawful search. The trial court denied the motion. The basis of the trial court's ruling is not entirely clear. The trial court found that Cash was reasonably concerned for his safety and that he had the authority to check defendant for weapons. The court also found that, from the time that defendant knocked on the window, Cash had probable cause to arrest defendant for involvement with the drugs found in the home. The trial court found that the patdown of defendant was not voluntary. It also held that defendant's statement that he had methamphetamine in his pocket was admissible because Cash had not asked him if he had any drugs and, therefore, defendant's statement was not the result of an interrogation. The trial court apparently also held, *sua sponte*, that the evidence of methamphetamine was admissible based on an inevitable discovery theory.

■ On appeal, defendant argues that the trial court erred in denying the motion to suppress. Defendant first contends that his statement to Cash that he had drugs in his possession must be suppressed because the statement was obtained as a result of interrogation by Cash that occurred while defendant was in custody and before he had been advised of his *Miranda* rights in violation of both the state and federal constitutions. *See* Or Const, Art I, § 12; US Const, Amend V. Before initiating interrogation of a suspect in custody, police officers must give the suspect *Miranda* warnings. *Miranda v. Arizona*, 384 US 436, 444, 86 S Ct 1602, 16 L Ed 2d 694 (1966); *State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990). Whether *Miranda* warnings were required here depends on whether (1) defendant was in custody and (2) interrogation of defendant occurred. Both factors are disputed here.

■■ We first address the issue of whether defendant was in police custody at the time that he told Cash that he had methamphetamine in his pocket. The Oregon Supreme Court

has held that Article I, section 12, of the Oregon Constitution requires *Miranda* warnings when a suspect is in "full custody" or in a "setting that judges would and officers should recognize to be compelling." *State v. Magee*, 304 Or 261, 265, 744 P2d 250 (1987). Whether "full custody" or "compelling" circumstances are at issue, the relevant inquiry is " 'how a reasonable [person] in the suspect's position would have understood his [or her] situation.' " *State v. Dinsmore*, 182 Or App 505, 514, 49 P3d 830 (2002) (quoting *State v. Wandle*, 75 Or App 746, 750, 707 P2d 1281 (1985), *rev den*, 300 Or 605, *cert den*, 479 US 888 (1986) (brackets in *Dinsmore*)). This court has observed that "one would hardly dispute that a person handcuffed on the street or in his own home is in 'full custody.' " *State v. Warner*, 181 Or App 622, 628, 47 P3d 501, *rev den*, 335 Or 42 (2002) (quoting *Magee*, 304 Or at 265). The federal test for determining whether a person is in full custody for *Miranda* purposes is similar. We explained the test in *State v. Zelinka*, 130 Or App 464, 882 P2d 624 (1994), *rev den*, 320 Or 508 (1995), to be "whether a 'reasonable person in defendant's situation would have understood himself [under the totality of the circumstances] to be in custody or under restraints comparable to those associated with a formal arrest.[']" *Id.* at 475 (citing *Berkemer v. McCarty*, 468 US 420, 441-42, 104 S Ct 3138, 82 L Ed 2d 317 (1984)).

In this case, even if it could somehow be said that defendant was not in full police custody at the time that this encounter occurred, at a minimum, the circumstances were compelling and comparable to those associated with a formal arrest. Defendant was ordered at gunpoint by a police officer to raise his hands. After defendant complied, the officer reholstered the gun. At that time, however, defendant was ordered to turn around and drop to his knees, and he was handcuffed. A reasonable person in defendant's position would have understood that he or she was in compelling circumstances for purposes of Article I, section 12, and the Fifth Amendment.

We next address the question of whether defendant was "interrogated" before receiving *Miranda* warnings. The trial court found, at least implicitly, that Cash did not ask defendant if he had any drugs. The state argues that we are bound by the trial court's findings of fact on this point. It is

true that we are bound by a determination of fact by a trial court "unless the evidence * * * is such that the trial court as finder of fact could decide a particular fact question in only one way." *State v. Johnson*, 335 Or 511, 523, 73 P3d 282 (2003); *see also State v. Bryant*, 191 Or App 620, 625, 83 P3d 941 (2004).

Here, defendant asserts that there is no evidence to support the trial court's factual finding that Cash *did not* ask defendant whether he had narcotics. Our review of the record reveals that defendant is right; based on the evidence in this record, the court could only find that Cash *did* ask defendant if he had any drugs. At the hearing on the motion to suppress, Cash stated three times that he had asked defendant whether he had narcotics in his possession. On cross-examination, Cash stated, "Then I asked him to come into the room, and then I asked him to turn around. I said, 'Do you have any weapons or narcotics on you,' and asked for a consent search, at which time he did." Later, on cross-examination, Cash stated:

> "I asked him for permission, and he gave me that permission to do a pat search. I asked him specifically if he had any weapons or narcotics on his person, at which time he divulged to me that he had some methamphetamine in his left front coat pocket, at which time I did my pat search after he agreed, located the tin, a cigarette tin, the meth that he talked about prior to me going into the pocket."

On direct examination, when asked whether Cash had a conversation with defendant, Cash said, "Yes I did, if I can refer to my report again. I asked Grover did he have any weapons, Mr. Grover, did he have any weapons, or any (inaudible) on his person, and would it be okay if I checked." Following this answer, the prosecutor recapped the testimony: "You asked him if he had weapons or narcotics on him, and would it be okay to check. What did he reply to that question?"

Finally, Cash's characterization of defendant's admission as "not blurting" out this statement supports the conclusion that defendant's statement was in response to a question. On cross-examination, Cash was asked, "So [defendant's] statements, he just blurted out, 'I've got some meth?'" Cash responded:

"Well, I wouldn't say 'blurted out.' I would say that * * * we established a dialog[ue]. These kids know when you care about them. And I haven't done anything to him to make him think I wouldn't have anything other than his welfare in mind. I've had numerous conversations with his mother in trying to help him deal with his problems. So this isn't a kid I don't know. I know this young man. So when he told me, he told me matter of fact that, 'Yes, I have it in my left coat pocket, I have methamphetamine in my left coat pocket,' at which time I retrieved it."

At oral argument, in response to the court's inquiry regarding what evidence there was in the record to support a finding that Cash did not ask defendant if he had any drugs, the state pointed to only one colloquy that, in its view, could support such a finding. The state's attorney cited a portion of the transcript during defendant's counsel's cross-examination of Cash. Defendant's counsel stated:

"So you just pulled a gun on this young man and then holstered the gun, ordered him down, and then at that time you asked him if you could pat him down—I'm just going to make sure this is all correct. You asked him if you could pat him down. At that time he said—gave you consent, said yes, and then he had stated that he had some methamphetamine."

Cash responded, "That's correct." Neither the question nor the answer cited by the state mentioned that defendant was asked about drugs. Nonetheless, that does not contradict Cash's clear and unequivocal testimony that he did ask defendant about narcotics. It is notable that, even the state, in its closing argument on the motion to suppress, asserted that Cash asked defendant if he had "weapons, drugs." In summary, we find no evidence to support a finding that Cash *did not* ask defendant whether he had narcotics and, accordingly, we are not bound by the trial court's factual finding on that issue.

■ The state argues that if we "decide that the trial court erred in its factual findings," we should "remand the matter to the trial court * * * to make additional findings" rather than "make [our] own factual determinations in the first instance." However, the cases relied on by the state in support of that argument involved different circumstances

and do not support the state's position. *State v. Paulson*, 313 Or 346, 352-53, 833 P2d 1278 (1992); *State v. Dorey*, 100 Or App 457, 462-63, 786 P2d 1288, *rev den*, 310 Or 133 (1990); and *State v. Rivas*, 99 Or App 23, 29-30, 781 P2d 364 (1989), *adhered to as modified*, 100 Or App 620, 788 P2d 464, *rev den*, 310 Or 122 (1990), all involved circumstances where the need for a finding on a certain critical fact was obviated by the trial court's erroneous legal conclusions *and* where the existing record contained potentially *conflicting* evidence on that critical fact. In this case, the court did not reach a prior legal conclusion that obviated the need to consider a *Miranda* violation; the court could not have decided to deny the motion to suppress defendant's confession unless the court found no *Miranda* violation. In addition, the record reveals no conflicting evidence regarding whether Cash asked defendant if he had possession of drugs. Based on the evidence in this record, the only finding of fact that can be made on this issue is that Cash did ask defendant about narcotics before he was given *Miranda* warnings. Accordingly, a remand to make a finding on this particular factual question is inappropriate. *State v. Cohn*, 43 Or App 913, 916, 607 P2d 729 (1979).

■     We next address whether Cash's question of defendant regarding drugs constitutes "interrogation" under *Miranda*. We conclude that Cash's inquiry of defendant was "interrogation" for purposes of *Miranda*. In *State v. Pender*, 181 Or App 559, 47 P3d 63 (2002), we decided a similar issue. In *Pender*, an officer arrested the defendant on an outstanding warrant for a probation violation. While he was handcuffing the defendant, the officer asked "whether [the defendant] had any 'knives, guns, syringes, [or] controlled substances.' " *Id.* at 561. We held that questions concerning "knives, guns, [and] syringes" were permissible under the exception for questions "normally attendant to arrest and custody." *Id.* at 561-62. We explained that those questions have an officer safety, rather than an investigatory, purpose and are not subject to *Miranda*. *Id.* We reached a different conclusion, however, with regard to the question about "controlled substances." We held that such questions have only an investigatory purpose and are "designed precisely to do what Miranda prohibits: elicit incriminating information * * * without an advice of rights." *Id.* at 563. We also held that the

*Miranda* exception for "public safety" situations did not apply; no emergency situation existed in which the officer needed to quickly know whether the defendant possessed controlled substances. *Id.* at 563-64.

In this case, as in *Pender*, the officer's question regarding drugs was not a question "normally attendant to arrest and custody." While Cash presumably had a noninvestigatory purpose in asking defendant whether he had any weapons, the only evident purpose for asking whether he had narcotics was to elicit incriminating information. The *Miranda* exception for "public safety" also does not apply. As in *Pender*, no emergency situation existed in which Cash needed to know immediately whether defendant had narcotics in order to protect the public's safety. It is undisputed that Cash gave *Miranda* warnings to defendant only after asking, and receiving a response to, his question about narcotics. Because defendant, while in compelling circumstances, was interrogated before he received *Miranda* warnings, the evidence of his confession to possession of methamphetamine must be suppressed. *See State v. Wolfe*, 295 Or 567, 571, 669 P2d 320 (1983).

■    Defendant also sought to suppress evidence of the methamphetamine found in his pocket when Cash did a pat-down search of defendant. Article I, section 9, of the Oregon Constitution prohibits the warrantless search of a suspect's person unless one of the established exceptions to the warrant requirement applies. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). As noted above, defendant argues that Cash had no warrant for the search and that no exception to the warrant requirement applies. The state responds that the search was valid under two exceptions to the warrant requirement: the "search incident to arrest" exception and the officer safety exception.

■    The exception from the warrant requirement for a search incident to arrest must, at a minimum, involve a valid arrest. *State v. Caraher*, 293 Or 741, 752, 653 P2d 942 (1982). A valid arrest requires that the officer have "probable cause to believe that the suspect has committed an offense" before the arrest occurs. *State v. Owens*, 302 Or 196, 203, 729 P2d 524 (1986). The trial court found that Cash had probable

cause to arrest defendant at the time that he searched him. In fact, as noted above, the trial court found that Cash had probable cause to arrest defendant when he knocked on the window. We disagree.

Before the search, Cash knew only that defendant had previously been found in possession of small amounts of marijuana, that defendant allegedly had threatened his own and his mother's life a week before, and that defendant was tapping on an apartment window outside a room in which methamphetamine had just been found in plain view. The only possible offense for which defendant could have been arrested at that point was "frequenting a place where controlled substances are used." ORS 167.222(1). That statute provides:

> "A person commits the offense of frequenting a place where controlled substances are used if the person keeps, maintains, frequents, or remains at a place, while knowingly permitting persons to use controlled substances in such place or to keep or sell them in violation of ORS 475. 005 to 475.285 and 475.940 to 475.995."

Under the facts of this case, there was not probable cause to arrest defendant for that offense. Our decision in *State v. Woodward*, 107 Or App 123, 126, 810 P2d 1330 (1991), involved somewhat similar circumstances. In that case, we held that the mere fact that a person, without knocking, walked into an apartment where drugs were being sold, was insufficient to support probable cause for arrest of that person for violation of ORS 167.222(1). The evidence here demonstrates even less of a link between defendant and the premises than in *Woodward*. Defendant here knocked on the window, and waited for permission, before entering the apartment. There was no evidence of earlier visits by defendant to the apartment or of any knowledge on defendant's part of drug activities in the apartment. Defendant did not "remain" in the apartment "while knowingly permitting persons to use controlled substances." He was stopped at gunpoint before he even reached the bedroom where the drugs were found. We conclude that Cash did not have probable cause to arrest defendant before searching him, and, accordingly, the search was not justified as a permissible search incident to arrest.

■ The state also argues that the search of defendant may be justified as an officer safety search. Under that exception to the warrant requirement, an officer may frisk a suspect for weapons if "the officer develops a reasonable suspicion, based on specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer." *Ehly*, 317 Or at 81. Based on the circumstances here, we believe that Cash was authorized to conduct an officer safety search. Cash was the only officer in an apartment with four persons where drugs had just been discovered. He was aware of a recent incident in which defendant had allegedly been in possession of a weapon and had threatened to kill himself and his mother. Cash had a *reasonable suspicion* based on specific and articulable facts that defendant posed an immediate threat of serious physical injury. Accordingly, Cash's patdown of defendant was permissible.

■ While Cash had reasonable suspicion to frisk defendant, it does not necessarily follow that he had sufficient suspicion to remove the cigarette pack or to open the pack and search its contents for officer safety purposes. In *State v. McMilian*, 191 Or App 62, 68, 80 P3d 538 (2003), we said, "The seizure and search of an item pursuant to an officer safety search must be supported by both an objective basis to believe and a subjective belief that the item contains a weapon." In *McMilian*, the officer did not have reasonable suspicion to open a checkbook found in the defendant's pocket where "there was no evidence that the officer believed that [the checkbook] could or did contain a weapon." *Id.*; *see also State v. Wiggins*, 184 Or App 333, 340-42, 56 P3d 436 (2002) (seizure of crumpled cigarette pack from the defendant's pocket not permitted where there was no "evidence in the record that the officer subjectively believed that the lump in defendant's pocket contained a weapon").

As we noted above, it was permissible for Cash to pat down defendant's outer clothing. If, during the patdown, he had felt an object that he subjectively believed could be or contain a weapon, and if that belief were objectively reasonable, Cash could have removed the object. Here, however, Cash felt defendant's left pocket after defendant told him that he had methamphetamine in that pocket. Consequently, Cash reached into the pocket assuming that it contained

methamphetamine. There is no evidence that Cash, after feeling the pack, believed that it could be a weapon. Further, as in *McMilian*, the record contains no evidence that, on viewing the cigarette pack, Cash believed that it potentially contained a weapon. Accordingly, there are no specific and articulable facts to support a reasonable suspicion that the pack and its contents posed a threat to officer safety and the search and seizure of the cigarette pack may not be justified on that basis.

For all of the above reasons, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.