Argued and submitted August 17, affirmed November 7, 2007, petition for review denied February 13, 2008 (344 Or 110)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JULIO CESAR OLIVAR,
*Defendant-Appellant.*

Washington County Circuit Court
C050438CR; A130715

171 P3d 1006

Andy Simrin argued the cause and filed the brief for appellant.

Anna M. Joyce, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ROSENBLUM, J.

**ROSENBLUM, J.**

A jury found defendant guilty of three counts of sexual abuse in the first degree, ORS 163.427. He argues on appeal that the trial court erred in ruling that incriminating statements that he made to the police on two separate dates were admissible in evidence. With respect to the first occasion, he contends that he made the statements under compelling circumstances without having been given *Miranda* warnings. With respect to the second occasion, he made statements first to one police officer and then to another. The trial court admitted only the statements to the second officer. Defendant does not argue on appeal that his statements to the second officer were compelled. Rather, he contends that, although the trial court did not admit the statements made to the first officer, the state failed to prove that *those* statements were not compelled and, as a result, his statements to the second officer were inadmissible because they were the product of exploitation of his statements to the first officer. We review for errors of law. *State v. McMillan*, 184 Or App 63, 67, 55 P3d 537 (2002), *rev den*, 335 Or 355 (2003). We reject on the merits defendant's argument with respect to the first occasion and, as to the second, we conclude that his exploitation argument is unpreserved. Accordingly, we affirm.

We take the following facts from the record developed at the hearing on the admissibility of defendant's statements. On January 6, 2005, Detective Wayt of the Tigard Police was assigned to investigate defendant. Wayt went to defendant's home, but defendant was not there. Wayt left a business card and a note asking defendant to call him. On January 12, defendant called Wayt. Wayt told defendant that "allegations" had been made and that Wayt "needed to interview him." Defendant agreed to come to the police station. At the station, Wayt walked defendant to the interview room. Wayt was dressed in plain clothes and was unarmed. Wayt locked the doors to the interview room but told defendant that he was not under arrest, that he was free to leave at any time if he did not like Wayt's questions, and that he was free to use the restroom or to get something to drink. Wayt did not advise defendant of his *Miranda* rights.

The interview lasted between 45 minutes and an hour. Defendant spoke English with a thick Spanish accent, but he assured Wayt that he could understand him and did not need an interpreter. He did not ask to leave at any time. Wayt made no threats or promises to defendant at any time during the interview, and defendant did not appear to be under the influence of intoxicants or otherwise mentally or physically impaired. When the interview concluded, Wayt escorted defendant to the lobby of the police station. Defendant agreed to be interviewed by Detective McKinney of the Washington County sheriff's office in Hillsboro the following week, on January 18.

Defendant had no way to get to Hillsboro, so Wayt picked him up at his home on January 18 and drove him to the sheriff's office in his unmarked police car. Defendant rode in the front passenger seat. Wayt was again dressed in plain clothes; he was armed, but his gun was concealed at least to some degree by his coat. They arrived at the sheriff's office at about 2:35 p.m. Wayt left defendant in the lobby while he notified McKinney that they had arrived. Wayt and McKinney both went to the lobby, where Wayt introduced McKinney and defendant. McKinney was dressed in plain clothes. McKinney and defendant went to McKinney's office; Wayt left the building and went for a walk. Wayt later testified that it was about 2:45 p.m. when he left defendant with McKinney.

At about 3:30 p.m., McKinney called Wayt on his cell phone and asked him to return to the office. Wayt arrived there a few minutes later and sat down with defendant and McKinney. He did not tell defendant that he was free to leave, but McKinney told him that he had "gone over the rights" with defendant. Defendant acknowledged that McKinney had done so. Wayt confirmed with defendant that he understood his rights and was comfortable giving them up. After that, the two detectives and defendant had a conversation that lasted between five and 10 minutes. All three spoke in English. Again, Wayt did not make any threats or promises to defendant, and defendant did not appear to be impaired in any way. Defendant did not ask to leave at any time. When the interview ended, Wayt gave defendant a ride back to his home.

Defendant was indicted two weeks later on three counts of first-degree sexual abuse. Before trial, the state requested a hearing to determine the admissibility of the statements that defendant made to the detectives during the interviews. Wayt was the only witness at the hearing. He testified to the facts stated above. At the hearing, the state also introduced into evidence an "advice of rights statement," a preprinted form listing the *Miranda* warnings. It had an "x" on the line next to the statement "Do you understand each of these rights?" The form appeared to have been signed by both defendant and McKinney. The date and time were handwritten as January 18, 2005, at 2:40 pm. Wayt testified that he was not present when the form was filled out, and when asked whether defendant had acknowledged the form in front of him, Wayt stated that he could not remember.

After Wayt finished testifying, the prosecutor argued that the statements that defendant made to the detectives were all voluntary. He argued that neither of the interviews involved compelling circumstances and that *Miranda* warnings were thus not required. With respect to the January 18 interview, he asserted that, even though *Miranda* warnings were not required, they were in fact given, arguing further that defendant had voluntarily waived his rights.

Defense counsel's entire argument was as follows:

"Thank you, Your Honor. I really am not going to focus on the January 12th matter at all. I'm going to focus on the January 18th issue.

"We would point out to the Court that although this was supposed to be freely and voluntarily made, the officer testified that he came with the firearm that was on his person and to some degree was visible at the time of being picked up at the apartment and then transported to [the sheriff's office], and then subsequently transported back, that the detective himself didn't make any significant observations other than the defendant apparently was responding in the English language to questions in some form or fashion. But the detective—officer that witnessed on the January 18th matter did not make any observations, I don't believe, regarding whether or not he was intoxicated or had any

mental issues or physical issues at the time of that interview presumably that may or may not have been done by Detective McKinney who is not being offered as a witness.

"So on those issues, I think there are some compelling issues and we request that as to the January 18th conference, the Court not allow that."

The trial court ruled first that defendant's statements on January 12 were voluntary. With respect to his statements on January 18, the court ruled as follows:

"On the 18th, the only statements that the Court can really be concerned with at this point, and the only information that I really know about are the conversations or statements that may have been made after the detective returned to McKinney's office. I don't know what statements or events occurred during that period of time.

"So my ruling is limited to what the officer heard after he returned from his walk and, of course, what he did before he brought the defendant there.

"Again, the defendant voluntarily went with the officer, he was not under arrest. The fact that the officer may have had a firearm, there was no indication that he showed it, brandished it, pointed to it, indicated that it was there in any way that would imply a threat. There were no promises made on the way in to the station, or to the sheriff's office. He went voluntarily with Detective McKinney. Whatever happened, happened in there. There is no indication that anything happened in there that involved threats or overcoming his voluntary nature of being there. The officer returned—the officer in my notes indicated that while he was there, no threats were made, no promises were made. He did not appear to be under the influence of anything. He did not appear to have any disabilities. Again, the conversation was occurring in English. There didn't appear to be any problems with English. There were no apparent problems [t]hat my notes reflect.

"*Miranda* may have been given. There is an indication on a piece of paper with a signature of the individual, but *Miranda* was not required for this proceeding. He was not under arrest; he was not restrained in any way. In fact, he was returned again to his home by the officer. Any statements that he made to the officer when he returned—that he observed upon his return from his walk [were] freely and

voluntarily, intelligently and knowingly given and will be admitted."

After the court ruled, defense counsel sought clarification, asking whether the court's ruling as to the January 18 interview "only relates to statements that were made in front of Detective [Wayt] at that time." The court confirmed that the state could introduce only the statements that defendant made after Wayt returned from his walk. Counsel did not raise any objection or offer any other argument.

At defendant's trial, Wayt testified that, at both interviews, defendant had admitted to him that he had sexually abused the victim. A jury found defendant guilty on all counts. This appeal followed.

■■■ Under Article I, section 12, of the Oregon Constitution, evidence of statements made by a defendant in response to police interrogation while in full custody or in compelling circumstances without the benefit of *Miranda*-like warnings is not admissible.[1] *State v. Grover*, 193 Or App 165, 170, 90 P3d 8 (2004). In determining whether the circumstances are compelling, the relevant inquiry is how a reasonable person in the defendant's position would have understood his or her situation, based on the totality of the circumstances. *Id.* Whether the circumstances are sufficiently compelling to require *Miranda* warnings is a question of law. *State v. Stevens*, 311 Or 119, 135, 806 P2d 92 (1991). Under the Fifth Amendment to the United States Constitution, a police officer is obligated to provide *Miranda* warnings if a reasonable person in the defendant's situation would have understood himself, under the totality of the circumstances, to be in custody or under restraints comparable to those associated with a formal arrest. *Grover*, 193 Or App at 170.

Defendant argues on appeal that the trial court erred in admitting the statements that he made to Wayt in the interviews. We begin with his arguments concerning the January 12 interview. Defendant contends that Wayt's statement that allegations had been made against him amounted to an accusation of criminal activity.[2] He also argues that his

---

[1] Defendant does not contend that he was in full custody.

[2] In support of his argument, defendant relies on three cases in which we held that compelling circumstances existed when the police confronted the defendant

liberty was restrained because Wayt's statement that he "needed to interview" defendant left little room for defendant to think anything but that an interview was obligatory. Defendant also contends that, although Wayt told him that he was free to leave at any time, Wayt's action in locking the doors to the interview room and leaving them locked throughout the interview undercut the force of that statement.

■■    We conclude that the circumstances at the January 12 interview were not compelling for Oregon constitutional purposes and that defendant was not under restraints comparable to arrest for purposes of the Fifth Amendment. We acknowledge that an accusation of criminal activity can contribute to compelling circumstances. *See, e.g.*, *Miranda v. Arizona*, 384 US 436, 455, 86 S Ct 1602, 16 L Ed 2d 694 (1966) (noting that "[t]he aura of confidence in [a defendant's] guilt undermines his [or her] will to resist"); *State v. Roble-Baker*, 340 Or 631, 643, 136 P3d 22 (2006) (holding that asking the defendant questions that assumed her guilt contributed to compelling circumstances). However, we reject defendant's assertion that Wayt in effect accused defendant of a crime merely by informing him that allegations had been made. Nothing in the record indicates that Wayt suggested that he believed the allegations or that he otherwise conveyed an "aura of confidence" in defendant's guilt.

■    In any event, defendant's liberty was not restrained when Wayt told him that allegations had been made. Defendant was at home at the time; he and Wayt were talking on

---

with incriminating evidence while the defendant's liberty was restrained. *See* *McMillan*, 184 Or App at 70; *State v. Werowinski*, 179 Or App 522, 40 P3d 545, *rev den*, 334 Or 632 (2002); *State v. Rose*, 109 Or App 378, 819 P2d 757 (1991). To the extent that defendant's citation of those cases can be read as an argument that Wayt confronted him with incriminating evidence, we reject that argument. In *State v. Shaff*, 209 Or App 68, 74, 146 P3d 389 (2006), *rev allowed*, 342 Or 473 (2007), we explained that, when a suspect being questioned by a police officer "becomes aware that the officer has sufficient evidence to make an arrest, the circumstances become much more compelling," and that "[d]irect confrontation with the evidence of criminal conduct also exerts pressure on a reasonable person to provide an explanation." (Citations and internal quotation marks omitted.) Nothing in the record indicates that Wayt directly confronted defendant with any evidence, much less sufficient evidence to make an arrest. Merely telling someone that allegations have been made is not the same as directly confronting the person with incriminating evidence.

the telephone. *Cf. id.* at 642 (when the police accused the defendant of killing her husband, she was at the police station, and her liberty was restrained because the police had created a situation in which she was required, for all practical purposes, to remain there). The circumstances were no more compelling when defendant went to the police station: Wayt made it clear that defendant was free to leave if he did not like Wayt's questions. We acknowledge that the fact that the interview room doors were locked could contribute to compelling circumstances, but, by itself, it is not enough. *Cf. State v. Werowinski*, 179 Or App 522, 531, 40 P3d 545, *rev den*, 334 Or 632 (2002) ("[T]he fact that defendant was unable to leave the patrol car is not determinative of the existence of compelling circumstances."). In short, given the circumstances of the interview—particularly that Wayt expressly told defendant that he was not under arrest and that he was free to leave at any time—we do not believe that a reasonable person in defendant's position would have felt compelled to answer Wayt's questions or have understood himself to be under restraints comparable to those associated with a formal arrest. The trial court correctly concluded that *Miranda* warnings were not required. It follows that the court did not err in allowing Wayt to testify about defendant's statements in the January 12 interview.

We turn to defendant's arguments concerning the January 18 interview. Defendant does not contend that compelling circumstances existed when he made the statements that Wayt testified about at trial—namely, those that defendant made after Wayt returned to McKinney's office. Rather, he argues that those statements should have been suppressed because they were "fruit of the poisonous tree"—that is, the product of exploitation. Defendant contends that two interviews took place in McKinney's office: one with McKinney alone and another after Wayt returned from his walk. Defendant points out that McKinney did not testify at the hearing and that the state presented no evidence about the circumstances when McKinney and defendant were alone. Because the state bore the burden of proving that the circumstances were not compelling, defendant contends, the absence of evidence precludes a ruling in the state's favor on that issue. In other words, in defendant's view, we must

assume that the circumstances *were* compelling and, consequently, that his statements to McKinney were unlawfully obtained. Defendant asserts that the statements that he then made to Wayt were the direct product of his statements to McKinney and must be suppressed under exploitation principles.[3] *See generally Wong Sun v. United States*, 371 US 471, 484-86, 83 S Ct 407, 9 L Ed 2d 441 (1963) (explaining federal "fruit of the poisonous tree" analysis); *State v. Hall*, 339 Or 7, 34-35, 115 P3d 908 (2005) (explaining exploitation analysis under the Oregon Constitution).

The state agrees with defendant that his arguments on appeal are preserved. Nevertheless, we have an independent obligation to ensure that preservation requirements are satisfied, *State v. Wyatt*, 331 Or 335, 344-46, 15 P3d 22 (2000), and, in this instance, we do not accept the state's concession. As explained below, defendant did not preserve his exploitation argument. Consequently, we do not reach the merits of defendant's argument.

To preserve an asserted error for appeal, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *Id.* at 343. Preservation rules are meant to ensure "that the position of a party is presented clearly to the trial court and that parties are not taken by surprise, misled, or denied opportunities to meet an argument." *State v. Wideman*, 203 Or App 359, 364, 124 P3d 1271 (2005).

Before the trial court, defendant did not argue that his statements to Wayt were derived through exploitation of his statements to McKinney. The only argument that he made with respect to the statements to McKinney was his counsel's assertion that Wayt "did not make any observations, I don't believe, regarding whether or not [defendant] was intoxicated or had any mental issues or physical issues at the time of that interview presumably that may or may not

---

[3] Defendant also argues that his statements on January 18 were the product of exploitation of his January 12 interview. Our conclusion that defendant's statements on January 12 were not obtained in violation of his *Miranda* rights obviates the need for any exploitation analysis in that regard.

have been done by Detective McKinney who is not being offered as a witness." Thus, defendant argued that the state failed to prove that his statements to McKinney alone were not made under compelling circumstances. However, he did not assert the position that he now takes on appeal—namely, that defendant's statements to Wayt were the direct product of his earlier statements to McKinney and that they must be suppressed on exploitation grounds. Consequently, the trial court was not alerted to the substance of defendant's position on appeal, so we will not consider that argument.

Affirmed.