Submitted October 31, 2012, reversed and remanded May 22, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SARAH JANE MILNES,
*Defendant-Appellant.*

Josephine County Circuit Court
10CR0025, 08CR0420;
A146765 (Control), A146800

301 P3d 966

Peter Gartlan, Chief Defender, and David Sherbo-Huggins, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Douglas F. Zier, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Duncan, Judge, and Brewer, Judge pro tempore.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

In this consolidated appeal, defendant appeals from judgments convicting her in one case of felon in possession of a firearm and revoking her probation in another case based, in part, on the firearm conviction. The sole issue on appeal is whether the trial court erred in giving what is known as the "witness-false-in-part" jury instruction. ORS 10.095(3); UCrJI 1029.[1] We review the trial court's decision whether to give the instruction for abuse of discretion, which, in this case, means that we review to determine whether the factual predicate to give the instruction was met. *Ireland v. Mitchell*, 226 Or 286, 292, 359 P2d 894 (1961). As explained below, we conclude that the trial court erred in giving the instruction in this case and that the error was not harmless. Accordingly, we reverse and remand both judgments.

The pertinent facts are undisputed. Around midnight on January 8, 2010, Deputy Shaw and another officer responded to a report of a domestic disturbance. Defendant's mother, who had placed the 9-1-1 call, led the deputies to defendant's bedroom. Shaw listened at the door and could hear loud music and a man and woman arguing. He knocked on the door for about 10 minutes before defendant opened it and came out into the hall, wearing only a t-shirt and underwear. She closed the door immediately behind her.

Shaw asked defendant if her boyfriend, Brett, who Shaw knew was on probation, was in the room. Defendant denied that he was there. Saying that she needed to put on

---

[1] ORS 10.095(3) provides, in part, that the jury is "to be instructed by the court on all proper occasions" "[t]hat a witness false in one part of the testimony of the witness is to be distrusted in others."

The version of Uniform Criminal Jury Instruction 1029 in effect at the time of defendant's trial provided:

"A witness who lies under oath in some part of his or her testimony is likely to lie in other parts of his or her testimony. Therefore, if you find that a witness has lied in some part of his or her testimony, then you may distrust the rest of that witness's testimony.

"Sometimes witnesses who are not lying may give incorrect testimony. They may forget matters or may contradict themselves. Also, different witnesses may observe or remember an event differently.

"You have the sole responsibility to determine what testimony, or portions of testimony, you will or will not rely on in reaching your verdict."

The instruction has since been revised, effective December 2012.

some clothes, she then stepped into a bathroom and closed the door. When she emerged a few minutes later, Shaw told her that he had heard her talking with a man in the bedroom, that he knew Brett was there, and that Brett needed to come out. Defendant again denied that Brett was there, saying that she had been talking to her dog. Defendant then quickly opened the bedroom door, saying, "See, he's not in here," and "he must have gone out the window." Shaw knew that no one had gone out the window, however, because he was aware that another officer had arrived on the scene and was watching the bedroom window from outside. Shaw looked into the room and spotted Brett, who was lying on the floor up against the bed. Shaw ordered Brett to stand and took him into custody on a probation violation detainer.

The officers brought Brett and defendant outside to their patrol cars. As they were placing Brett in one of the cars, the other deputy told Shaw that he had seen a "rifle round [lying] on the bed." When Shaw asked defendant about the rifle round and if there were any weapons in the house, she "immediately turned and started double timing it up back up to the house"; the officers stopped her and placed her in handcuffs. Defendant denied any knowledge of weapons or ammunition in the room. Shaw went back into the bedroom and recovered a lever-action rifle lying on the floor near the bed and several rifle rounds. Defendant was charged with felon in possession of a firearm, ORS 166.270(1), and violation of the general and special conditions of her probation, specifically "failing to remain a law-abiding citizen" and "fail[ing] to abstain from the use of intoxicants."

The felon-in-possession charge was tried to a jury. At trial, Shaw testified to the above-recounted facts. Defendant also testified. On direct examination, defendant related that she and Brett were in the bedroom "just kind of like yelling at each other over really loud music" when the police came to the door. She admitted that she was on probation at the time of the offense, and, although a condition of her probation was that she not drink alcohol, she had had a relapse and was inebriated that night. When asked if she had been "trying to allow there to be some time for [Brett] to leave" when she stepped out of the bedroom in response to the officer's

knocking, she replied, "No." She also testified that she had not seen any bullets or a gun.

Then, on cross-examination, the following exchange took place:

"Q. Okay. Why did you tell the officers that [Brett] wasn't in your room?

"A. Because I—because I didn't want him to go to jail.

"Q. Go to jail for what?

"A. Drinking.

"Q. And did it seem reasonable to you to say that it was the dog, that you were talking to the dog?

"A. No.

"Q. And when you opened the door and said, 'See, there's no one there[,]' did you expect to see him hiding? Did you expect that he would have gone out the window? Why did you say that?

"A. I don't know, I just figured that—I didn't know there was a cop outside the window, I—you know? I just figured that they would be like, 'Okay. He's not there[,]' and then leave, I guess is what I was thinking.

"Q. So, you figured enough time had passed that he would have gone out the window?

"A. No, I—no, I knew he didn't go out the window.

"Q. So, then you knew he would be hiding?

"A. Yeah."

The state asked the court to give the witness-false-in-part jury instruction. Defense counsel objected, asserting that the instruction typically applied to "lies witnesses are—are caught in on the stand" and that was not the case here. The prosecutor agreed with that proposition—that is, that the instruction applied only to statements "on the stand"—but continued:

"But, the incident to which I'm referring is the confusion and the misstatements regarding whether he had gone out the window, no he was hiding and there was inconsistencies which I think are partial lies that happened there. You

know, 'Did you give him an opportunity to go out the window?' 'No, I wasn't.' But then she opens the door and says, 'See there's no one there[,]' thereby implying that he would have had an opportunity to go out of the window.

"And then she changed it to, 'Well, no, I didn't think he'd gone out the window, then I must have thought he was hiding.' And I think that string of question and answers is sufficient to support a witness false in part."

Defense counsel disagreed that there was any "clear contradiction that you could call a falsehood in [defendant's] testimony today" and that what the prosecutor "is talking about is a contradiction between on-stand testimony and things that were said before."

The trial court reasoned that, although the instruction refers to "testimony," the explanatory comment to the instruction indicated "that it wouldn't be an abuse of discretion to give that instruction when there was a major inconsistency between [defendant's] testimony and her prior statements."[2] Accordingly, over defendant's objection, the court gave the witness-false-in-part jury instruction, and the jury found defendant guilty of the felon-in-possession charge. Based on that jury finding, and defendant's admission that she had violated the conditions of her probation in consuming alcohol that night, the court also revoked defendant's probation.

On appeal, defendant argues that, contrary to the state's theory at trial, "[n]o part of [defendant's] testimony on cross-examination contradicted any part of her testimony on direct nor was it internally inconsistent." Moreover, defendant contends, the trial court's reasoning for giving the instruction was flawed because inconsistencies between defendant's trial testimony and her statements to the police at the scene do not demonstrate that she "'consciously *testified*

---

[2] At the time, the comment to Uniform Criminal Jury Instruction 1029 provided, as relevant:

"ORS 10.095(3); *Ireland v. Mitchell*, 226 Or 286, 293, 359 P2d 894 (1961); *see State v. Weaver*, 139 Or App 207, 911 P2d 969 (1996) (court did not abuse discretion by refusing to give instruction when there were only minor inconsistencies between the witness's testimony and her previous statements)."

falsely.'" (Quoting *Ireland*, 226 Or at 293 (emphasis defendant's)). Instead, according to defendant, she candidly testified at trial that her *earlier statements* to the police were false—that is, that she had lied to the police in order to protect her boyfriend—and, therefore, the court abused its discretion in giving the instruction.

The state responds that the instruction was justified based on either theory—that is, based on internal inconsistencies in defendant's trial testimony or because her trial testimony was inconsistent with her statements to the police at the scene. Regarding the latter, the state contends that the case law does not support defendant's asserted distinction "that only instances of perjury at trial authorize giving the witness-false-in-part instruction." The state also suggests that, in any event, any error in giving the instruction was harmless.

As explained below, we agree with defendant. We also conclude that the error was not harmless. Therefore, we reverse and remand defendant's judgment of conviction for felon in possession of a firearm, as well as the resulting judgment of probation violation.

The statutory instructions set forth in ORS 10.095 are to be given "on all proper occasions." A "proper occasion" for giving the instruction stated in ORS 10.095(3)—"[t]hat a witness false in one part of the testimony of the witness is to be distrusted in others"—is when there is sufficient evidence from which the jury could decide "that at least one witness consciously *testified* falsely." *Ireland*, 226 Or at 293 (emphasis added).[3] There must be evidence "that a witness was willfully false, not just mistaken, confused or hazy in recollection." *State v. Long*, 106 Or App 389, 395, 807 P2d 815, *adh'd to as modified on recons*, 107 Or App 284, 812 P2d 831 (1991), *overruled on other grounds by City of Portland v. Jackson*, 111 Or App 233, 826 P2d 37 (1992), *rev'd*, 316 Or 143, 850 P2d 1093 (1993) (internal quotation marks omitted). Thus, if there is a basis in the record for determining that defendant willfully lied in her testimony, the court did not

_____

[3] At the time *Ireland* was decided, the instruction was codified at *former* ORS 17.250(3); that statute was renumbered in 1981 as ORS 10.095. The text has remained essentially the same.

abuse its discretion in giving the instruction. We turn to that question.

We begin with the reasoning on which the trial court apparently relied—that the instruction was proper due to inconsistencies between defendant's trial testimony and her statements to the police at the scene. As an initial matter, we agree with the trial court (and the state) that, as a general matter, a witness's unsworn statements that contradict the witness's testimony *can* provide the basis for giving the instruction; in other words, it need not be shown that the witness was inconsistent *within* the witness's trial testimony itself—as defense counsel put it at trial, that the witness be "caught" in a lie on the stand.

Three cases inform our conclusion in that regard. First, in *Ireland*, the question was whether the trial court had erred in not giving the witness-false-in-part instruction when there were minor inconsistencies between defendant's trial testimony and his deposition two years earlier. 226 Or at 289. The Supreme Court held that it was within the court's discretion to decline to give the instruction, because, while the instruction *could* properly have been given (that is, "[t]he jury could have found that the defendant's testimony did not ring true," *id.* at 294), "none [of the inconsistencies] gave enough indication of intentional deceit to require the instruction as a matter of law." *Id.* at 295. As the court observed, "the most obvious case" of the latter is when "a witness has manifestly perjured himself." *Id.* at 292.

Next, in *Long*, the trial court gave the instruction over the defendant's objection. The only possible basis for the instruction was a conflict between the defendant's and another witness's testimony at trial. 106 Or App at 395. We held that, although it was not "conclusive as to [the] falsity" of the defendant's testimony, the inconsistency *could* indicate that defendant was willfully false in his testimony and, therefore, the court did not abuse its discretion in giving the requested instruction. *Id.*

Finally, in *State v. Weaver*, 139 Or App 207, 211, 911 P2d 969, *rev den*, 323 Or 483 (1996), the defendant argued that the trial court had abused its discretion in declining

to give the instruction based on "a number of minor inconsistencies between the victim's testimony at trial and what she had previously recounted to authorities about defendant's alleged sexual acts." We affirmed the trial court's apparent conclusion that the discrepancies were not "material enough" to require the requested instruction, *id.*; implicit in that decision was our recognition that a contradictory statement that is not part of the witness's trial testimony or an otherwise sworn statement *could* support a witness-false-in-part instruction.

Those cases instruct that inconsistencies between a witness's trial testimony and (1) his or her deposition testimony, (2) another witness's trial testimony, or (3) the witness's prior, unsworn statements to investigating officials *can* support the giving of a witness-false-in-part instruction *if* the jury could find from those inconsistencies that the witness willfully testified falsely. The mere fact that the testimony of a witness is contradicted, however, is not *conclusive* as to its falsity. *Long*, 106 Or App at 395.

Thus, we agree with the trial court that inconsistencies between a defendant's trial testimony and the defendant's earlier statements to the police can provide evidence that the defendant has willfully testified falsely and, thus, support the giving of the instruction. However, that is not the case here. Although defendant told the police something different about her behavior the night of the offense than she testified to at trial, in her trial testimony, she admitted that she had lied to the police earlier. In response to questions on cross-examination, defendant explained that she had lied about Brett being in the bedroom because she did not want him to get into trouble for drinking in violation of his probation. Thus, the identified inconsistency does not tend to show that there was anything about defendant's *testimony* that was false—let alone consciously false—when measured against her earlier statements. Instead, defendant's testimony in this case demonstrates quite clearly that her prior statements were false, not that her testimony was false. In other words, there is nothing about defendant's statements to the police that contradicts her testimony at trial *that she had lied in making those statements*. In short, defendant's statements at the scene do not provide a basis from which the

jury could find that defendant consciously *testified* falsely, and the court abused its discretion in giving the instruction on that basis.

We turn to the alternative reasoning advanced by the state—that inconsistencies *within* defendant's trial testimony justified the court's decision to give the instruction. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60 20 P3d 180 (2001) (describing "right for the wrong reason" principle, which permits an appellate court to affirm a correct decision of the trial court on a basis other than one on which the trial court relied if certain predicate conditions are satisfied). The state contends that defendant "gave contradictory testimony about whether she knew or expected [Brett] to be hiding as a result of her delay tactics," and that that inconsistency was sufficient to support giving the instruction. We disagree.

The state points out that defendant testified, "I don't know," when asked whether, when she let the officers see into the bedroom, she expected to see Brett hiding or expected that he would have gone out the window, then later said she "knew [Brett] didn't go out the window," and agreed that she "knew he would be hiding." We disagree that that constitutes evidence from which a jury could find that defendant "consciously testified falsely." *Ireland*, 226 Or at 293.

Defendant's testimony was not internally inconsistent. Her statement, "I don't know," was in response to a compound query that posed three questions, two of which were contradictory. That exchange proceeded as follows:

"Q. And when you opened the door and said, 'See, there's no one there[,]' did you expect to see him hiding? Did you expect that he would have gone out the window? Why did you say that?

"A. I don't know, I just figured that—I didn't know there was a cop outside the window, I—you know? I just figured that they would be like, 'Okay. He's not there[,]' and then leave, I guess is what I was thinking.

"Q. So, you figured enough time had passed that he would have gone out the window?

"A. No, I—no, I knew he didn't go out the window.

"Q. So, then you knew he would be hiding?

"A. Yeah."

Thus, defendant's testimony that she "d[i]dn't know" reflects that she had not thought about what she expected Brett to have done; she hoped only that the officers would not see him. Her subsequent response indicating that she did not think enough time had passed for Brett to have gone out the window and therefore she "knew" that he was hiding does not contradict her testimony that she had not thought about what she expected when she opened the door. Accordingly, we decline to affirm the trial court's ruling on the alternative basis advanced by the state.

We also must consider whether the trial court's error in giving the instruction was harmless. Article VII (Amended), section 3, of the Oregon Constitution requires us to affirm the trial court's judgment even if error was committed, if that error was harmless. *State v. Affeld*, 307 Or 125, 128, 764 P2d 220 (1988). "Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003).

The state suggests that the error here was harmless because, given defendant's admission at trial that she had lied to the police at the scene, the jury "undoubtedly was on notice that defendant's credibility was suspect," even without the instruction. Moreover, the state contends, the uncontested evidence shows that the rifle that formed the basis for the felon-in-possession charge was in plain view in the bedroom—thus, defendant's testimony that she was unaware of it was "patently unbelievable."[4]

We disagree. The erroneously given instruction bears on the credit to be given to defendant's testimony *under oath*, which is qualitatively different from whether she was prepared to lie to the police at the scene. The credibility of that testimony was essential to defendant's success at trial: her theory was that the gun belonged to Brett, that she had

---

[4] It is unclear whether the rifle was in plain view, because photographs that were admitted at trial appear to show it partially protruding from underneath a bed.

not seen it before, and that he had brought it into her bedroom without her knowledge. Moreover, as defendant points out, the error in this case was particularly prejudicial because the prosecutor specifically connected the instruction with defendant and used it in closing argument. In his closing rebuttal argument, the prosecutor stated:

> "I want you to assume that the defendant was lying on that stand. And there's going to be a jury instruction that you're going to get that talks about that and it's called 'witness false in part.' And what it says is 'A witness who lies in one part of his or her testimony is likely to lie in other parts of [the witness's] testimony and you may distrust [the witness's] entire testimony.'"

Given those circumstances, we cannot say that the court's error in giving the instruction was unlikely to have affected the jury's verdict.

Finally, as noted, defendant's conviction for felon in possession of a firearm also formed the basis, in part, for the court's revocation of defendant's probation.[5] In sentencing defendant for the probation violations, the court did not indicate whether it would have revoked defendant's probation or imposed the same sentence in the absence of that conviction. We therefore also reverse the probation revocation judgment and remand to the trial court for reconsideration in light of the reversal of defendant's conviction. *See State v. McMilian*, 191 Or App 62, 69, 80 P3d 538 (2003), *rev den*, 337 Or 248 (2004) (reversing and remanding judgment of probation violation for trial court to reconsider revocation decision based, in part, on convictions that were reversed on appeal, citing *State v. Brown*, 53 Or App 666, 669, 633 P2d 20 (1981)).

Reversed and remanded.

---

[5] The other basis was defendant's admission that she had violated her probation by consuming alcohol.