JAMES, J.
*189 *796 Defendant appeals from a judgment of conviction of a single count of first-degree theft, ORS 164.055. On appeal, he claims the trial court erred in giving Uniform Criminal Jury Instruction (UCrJI) 1029, known as the "witness-false-in-part" instruction, to the jury. The state argues that the trial court was correct to give the instruction, because defendant's trial testimony conflicted with the testimony of another witness, and that inconsistency sufficiently established that defendant consciously testified falsely. Defendant disagrees, arguing that any discrepancy in the testimony was minimal and did not rise to the level of willful falsity required for the instruction. We agree with defendant and reverse and remand.
The underlying facts are largely undisputed by the parties. On March 30, 2015, the complainant, A, visited a dental office in Hillsboro, Oregon, for an appointment for her children. A sat in a chair in Exam Room 3 with one child on her lap, while a dental assistant worked on the other child. Beside her, she placed her wallet that contained $1,815 in cash. During the appointment, Exam Room 2 became open, so A took her other child to that room, leaving her wallet behind. The first child's appointment ended around the same time, and A stayed in Exam Room 2 with her children for about an hour.
Clinic staff cleaned Exam Room 3 around the patient's chair, but not the guest chair; they did not recover A's wallet. Defendant, the next scheduled patient, entered the room about 20 minutes after A and her children left and he stayed in the room for about half an hour. Part of the time, a hygienist was with defendant; part of the time, he was alone.
After A's children's appointments concluded, A went to the front desk, where she realized that she no longer had her wallet. The clinic staff began searching the office for the wallet. After several minutes, a hygienist looking for the wallet looked into Exam Room 3. That witness, while "narrating" a security video being shown to the jury,[1] testified at trial as follows:
*190 "[WITNESS]: I'm contemplating where that wallet may be, and I'm staring into that room. And I notice [defendant] messing with the chair. So I go to the room, and he bee-lines out of the room at the same time. Because I was going in to see what he was doing with the chair.
"* * * * *
"And so he is up standing, like sort of upright over the chair where the incline was, messing with something. And then I walked in as he walked out."
Defendant went to the bathroom before returning, completing his procedure, and eventually leaving the clinic. About 45 minutes later, police found the wallet, less the cash, in an air-conditioning duct in the bathroom. When police arrested defendant, he denied taking the wallet and had little money on hand.
At trial, defendant was asked about the witness's testimony concerning the chair. Defendant testified that he had suffered an injury that resulted in temporary bouts of incontinence and, at the time of the incident, that condition still existed. As a result, defendant could experience involuntary fecal discharge and he was concerned that that had occurred in the dental chair. According to defendant, at the time the witness saw him, he had experienced an incontinence episode and was repositioning himself in the chair to determine the extent of the incontinence and whether he needed to clean. According to defendant, his concern over the condition had prompted his sudden trip to the bathroom. With respect to his behavior in the chair, defendant testified:
"[COUNSEL]: Now, you heard testimony from [witness] that she says at certain points she saw you, kind of, I think it she described it as rustling or doing something with the chair. Do you recall hearing that testimony?
"[DEFENDANT]: Yes, sir.
"[COUNSEL]: Were you doing something or rustling with the chair?
*797 "[DEFENDANT]: Not with the chair. No.
"[COUNSEL]: What were you doing?
"[DEFENDANT]: Repositioning my body."
*191 On cross-examination, defendant further testified:
"[PROSECUTOR]: I just want to clarify a couple of things. On the day that you were there, March 30th, you were never fiddling underneath or fiddling with the chair in any way?
"[DEFENDANT]: No, sir.
"[PROSECUTOR]: You were just repositioning yourself?
"[DEFENDANT]: Correct."
At trial, the state requested UCrJI 1029, arguing that anytime the jury was asked to make a credibility determination, the instruction was appropriate. The prosecutor noted, "My opinion is it comes in whenever there is a question of truthfulness of a statement by the defendant." Defense counsel objected, arguing that the instruction was appropriate only when there had been a showing of willful falsity. The trial court ultimately gave the instruction.
UCrJI 1029 is derived from ORS 10.095(3), which provides that on "proper occasions" the jury is to be instructed "[t]hat a witness false in one part of the testimony of the witness may be distrusted in others." In determining whether a case presents a "proper occasion" to give the instruction described in ORS 10.095(3), the court must "determine, from all the testimony, whether or not there has been sufficient evidence for the jury to decide that at least one witness consciously testified falsely." State v. Roman , 288 Or.App. 441, 445, 406 P.3d 1119 (2017) ; see also Ireland v. Mitchell , 226 Or. 286, 293, 359 P.2d 894 (1961) (explaining former ORS 17.250(3) (1961), renumbered as ORS 10.095 (1981) ); State v. Milnes , 256 Or.App. 701, 706-08, 301 P.3d 966 (2013) (quoting Ireland and applying that test to determine "proper occasion" for giving UCrJI 1029).
We review a trial court's decision to give the witness-false-in-part instruction for an abuse of discretion. When a trial court exercises discretion, it acts within certain legal boundaries to choose from several permissible outcomes:
"Judicial discretion should * * * be exercised according to fixed legal principles in order to promote substantial *192 justice. * * * In short, judicial discretion is always bounded by a simple framework: It must be lawfully exercised to reach a decision that falls within a permissible range of legally correct outcomes."
State v. Harrell/Wilson , 353 Or. 247, 254, 297 P.3d 461 (2013) (internal citations and quotation marks omitted); see also State v. Rogers , 330 Or. 282, 312, 4 P.3d 1261 (2000) (" '[D]iscretion,' as this court has used that term, refers to the authority of a trial court to choose among several legally correct outcomes.").
A trial court can exceed the bounds of its permitted discretion in several ways. "[A] trial court's decision may be legally impermissible because it was guided by the wrong substantive standard." Espinoza v. Evergreen Helicopters, Inc. , 359 Or. 63, 116-17, 376 P.3d 960 (2016) ; see State v. Sarich , 352 Or. 601, 615, 291 P.3d 647 (2012) (as a prerequisite to the exercise of discretion, a court must apply the correct legal standard for determining the scope of that discretion). "Because whether a trial court applied the correct substantive standard to guide its decision is a question of law, we review that issue for legal error." Espinoza , 359 Or. at 117, 376 P.3d 960 ; see Sarich , 352 Or. at 615-17, 291 P.3d 647 (reviewing for legal error whether the trial court applied the correct standard for determining competency of the witness).
A trial court may also abuse its discretion if its decision is based on "predicate legal conclusions that are erroneous or predicate factual determinations that lack sufficient evidentiary support." Espinoza , 359 Or. at 117, 376 P.3d 960. This has historically been how most of our decisions on this jury instruction have been decided, when "we review to determine whether the factual predicate to give the instruction was met." Milnes , 256 Or.App. at 702, 301 P.3d 966.
*798 Even when the correct law is applied and there is sufficient evidentiary support for the underlying factual findings, a trial court abuses its discretion if its decision is clearly against all reason and evidence. Espinoza , 359 Or. at 117, 376 P.3d 960. Moreover, when a trial court exercises discretion, "the record must reflect a proper exercise of that discretion." Olson and Olson , 218 Or.App. 1, 15, 178 P.3d 272 (2008) (citing State v. Mayfield , 302 Or. 631, 645, 733 P.2d 438 (1987)
*193 ("holding that a trial court errs as a matter of law if it fails to exercise discretion, refuses to exercise discretion, or fails to make a record which reflects an exercise of discretion") (internal quotation marks omitted)). The trial court's explanation "must comport with the applicable legal framework and describe the basic reasons for the decision." Olson , 218 Or.App. at 15, 178 P.3d 272 ; see McCarthy v. Oregon Freeze Dry, Inc. , 327 Or. 185, 188, 957 P.2d 1200 (1998) (a court must exercise its discretion according to the relevant legal criteria).
While we have not expressly said UCrJI 1029 is disfavored, it is certainly an instruction to be approached with caution. As Ireland warned, "the instruction could produce speculation and mischief in the jury room." 226 Or. at 293, 359 P.2d 894. It is not, as the prosecutor argued at trial in this case, an instruction to be given merely because the jury will be asked to determine credibility. Nor does inconsistent, or even contradictory, testimony necessarily render the giving of the instruction appropriate. Rather, the court performs a critical gatekeeping role, determining whether sufficient evidence exists "for the jury to decide that at least one witness consciously testified falsely ." Roman , 288 Or.App. at 447, 406 P.3d 1119 (emphasis added).
In this case, we conclude that the record lacks sufficient evidentiary support for the necessary factual predicate to warrant the giving of the instruction-that is, on this record, there is insufficient evidence that a witness consciously testified falsely. See Milnes , 256 Or.App. at 702, 301 P.3d 966. This is not a case, like Roman , where defendant's testimony is obviously incompatible with the evidence presented at trial. 288 Or.App. at 447, 406 P.3d 1119. Here, the state has advanced no argument that defendant's characterization is incompatible with the security video. Rather, the state relies solely on the discrepancy between the witness's and defendant's trial testimony.
But, in this case, any inconsistency in the testimony between the witness and defendant is largely in the word choice each used to characterize the incident. The witness used the term "messing" with the chair, defense counsel paraphrased her testimony using the term "rustling," the prosecutor, in both his direct examination and on rebuttal, *194 paraphrased the testimony using the term "fiddling," and defendant said "repositioning." But there is no inconsistency on the facts that defendant was in the room, did something on the chair, got up from the chair, suddenly left the room for the bathroom, and then returned to the room a couple minutes later. While the prosecution did try to emphasize that the witness described defendant as standing at the time of her observation, defendant never contested that at some point in the encounter he stood, as he admitted doing so before visiting the bathroom.
Whatever inconsistency that might have been inferred between the witness's description of the scene and defendant's, it did not constitute sufficient evidence from which a jury could find that one witness consciously testified falsely . Roman , 288 Or.App. at 447, 406 P.3d 1119. It was, rather, the type of inconsistency common to mistake, confusion, or the differences in recollection that are innate to human perception. When two witnesses describe an event, there will nearly always be inconsistencies in their accounts. Those inconsistencies are not usually, in and of themselves, indicative of conscious falsity. As Ireland explained, "Mere honest mistake, confusion, and hazy recollection are frequently encountered. * * * While such phenomena have bearing upon the credibility of a witness and the value of his testimony, they do not invoke the statutory instruction." Ireland , 226 Or. at 293, 359 P.2d 894.
Reversed and remanded.

The video does not show the exam room itself, but only the hallway outside the room.