Argued and submitted December 5, 2017, affirmed October 9, 2019

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DENNIS VERNE DOWTY,
*Defendant-Appellant.*

Tillamook County Circuit Court
15CR32852; A163462

452 P3d 983

Defendant appeals a judgment revoking his probation, asserting that the trial court erred in (1) denying his motion to suppress statements that he made to his probation officer on the basis that the exclusionary rule of Article I, section 12, of the Oregon Constitution does not apply in a probation-revocation hearing, and (2) revoking his probation based on his earlier stipulation to revocation upon his first nonfinancial violation of probation, rather than as an exercise of the court's discretion. *Held*: (1) The trial court's error, if any, in admitting defendant's statements did not prejudice defendant and therefore did not provide a basis for reversal. (2) Defendant failed to preserve his second assignment of error.

Affirmed.

Jonathan R. Hill, Judge.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge.

DEHOOG, P. J.

Affirmed.

**DEHOOG, P. J.**

In this case, the trial court found that defendant had violated two of his probation conditions: (1) General Condition 11, that he "[p]romptly and truthfully answer all reasonable inquiries" by his probation officer, *see* ORS 137.540(1)(k), and (2) a special condition that he "enter into, satisfactorily participate in and successfully complete a sex offender treatment program *** [and] comply with all written treatment rules and directives." And, based on defendant's earlier stipulation that his first nonfinancial violation of probation would result in revocation (referred to as a "zero-tolerance stipulation"), the court entered a judgment revoking defendant's probation and imposing a 48-month prison term. Defendant appeals that judgment, raising two assignments of error.

Defendant first contends that the trial court erred when, reasoning that the exclusionary rule of Article I, section 12, of the Oregon Constitution does not apply in probation-revocation proceedings, it denied his motion to suppress statements he made to his probation officer. Second, defendant contends that the court erred in revoking his probation based on his zero-tolerance stipulation rather than as an exercise of the court's discretion. As explained below, we do not consider defendant's second assignment of error because defendant did not preserve that issue for our review. ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court ***."). Further, as to defendant's first assignment, we conclude that the trial court's error—if any—in admitting defendant's statements into evidence did not prejudice defendant and, therefore, does not provide a basis for reversal. Accordingly, we affirm.

We first set out the historical facts, which are undisputed. We then discuss the evidence presented at the suppression and probation-revocation hearings. Because our resolution of the case ultimately turns on whether any error with respect to the admission of defendant's statements was prejudicial to him, our consideration of the record necessarily includes all pertinent portions. *Cf. State v Harding*, 221 Or App 294, 302, 189 P3d 1259, *rev den*, 345 Or 503 (2008)

(in assessing whether an evidentiary error is harmless, we "describe and review all pertinent portions of the record, not just those portions most favorable to the state").

In November 2015, defendant entered a negotiated guilty plea and was convicted of second-degree sexual abuse, ORS 163.425, as a lesser included charge of first-degree rape. Pursuant to the parties' negotiations, the trial court designated defendant's conviction as grid block 10-F on the sentencing guidelines grid, granted a downward dispositional departure, and sentenced defendant to 60 months' probation.[1] In the judgment, the court imposed general and special conditions of probation on defendant, including, as pertinent to this appeal, that defendant (1) "[p]romptly and truthfully answer all reasonable inquiries by the Department of Corrections or a county community corrections agency," *see* ORS 137.540(1)(k) (General Condition 11), and (2) "enter into, satisfactorily participate in and successfully complete a sex offender treatment program * * * [and] comply with all written treatment rules and directives." The judgment also stated, "Defendant stipulates to revocation for first non-financial proven probation violation with a 75-month [Department of Corrections] sentence with no [Alternative Incarceration Programs]."

In October 2016, defendant's probation officer, Seaholm, reported that defendant was in violation of General Condition 11 and the special condition regarding sex offender treatment. As Seaholm explained in a written report, she had learned of defendant's violations after meeting with him at her office. Seaholm had directed defendant to report to her office due to her concern that he had been attempting to contact the victim of his underlying crime in violation of his probation. When defendant reported to Seaholm's office as instructed, she asked him whether he had contacted the victim. Defendant denied having attempted to contact the victim directly or indirectly. Seaholm asked to see defendant's cellphone, but defendant said that it was at home. She then asked for his Facebook user name and password so that she could access his account on her office

---

[1] Charges of first-degree sodomy, unlawful sexual penetration in the first degree, and fourth-degree assault constituting domestic violence were dismissed pursuant to the plea agreement.

computer to confirm that he had not posted messages for the victim online. Defendant complied with that request. As Seaholm was logging on to defendant's Facebook account, she asked him whether she would find evidence of any probation violations; he indicated that she would not. However, when Seaholm opened his account, she

> "immediately was faced with pictures of penises and female genitalia. There were two on-going conversations between [defendant] and two other women. These conversations had numerous, nude, sexual pictures that were sent back and forth between [defendant] and the other women. In addition, there were other images depicting masturbation and sexual poses that had been downloaded from the internet and sent on these messages."

Further, according to Seaholm,

> "[d]efendant admitted to sexting with four women; some dating back 6 months.

> "One of the pictures was of high concern because it showed sexual content (anal penetration) similar to that described in the original police report for the crime that [defendant] is currently being supervised. This picture appeared to be downloaded from the internet."

Seaholm eventually obtained defendant's phone from a companion waiting in the lobby,[2] and defendant allowed Seaholm and a detective who was present to search it. According to Seaholm, the phone contained pictures of children (including a photo of defendant's minor son and "another boy about the same age"), as well as videos of sexual conduct—"females touching genitalia." Seaholm contacted Dr. Cook, defendant's sex offender treatment provider, who confirmed that defendant's conduct placed him in violation of his treatment rules.[3] (As Seaholm later testified at the probation-violation hearing, Cook followed up with a written violation report, which included a copy of defendant's treatment rules; we discuss that report in some detail below.)

---

[2] Freeman, the mother of defendant's youngest son, accompanied him to Seaholm's office and waited in the lobby while Seaholm interviewed defendant.

[3] As we explain below, defendant's treatment rules prohibited, among other things, possessing images of children or adult females, possessing "pornographic literature," and possessing a "computer" with access to the internet.

At Seaholm's request, defendant wrote and signed a statement in which he admitted to sexting—exchanging sexually explicit "selfies" by cellphone—with four different women, two of them for as long as six months. He indicated his awareness that his conduct violated the terms of his probation and that he had not been truthful with Seaholm, writing, "I lied [t]hinking I would never get caught. Thinking I could do what I want to."

Based on Seaholm's report and defendant's written admissions, the state filed a motion requesting that the court schedule a show cause/probation-violation hearing and alleging that defendant had violated General Condition 11 and the special condition regarding sex offender treatment. The court granted the state's request.

Before the scheduled hearing, defendant filed a motion to suppress "all statements made by [defendant] to his Probation Officer." He argued that the statements he made to Seaholm—including his written admissions—were involuntary because he had been in compelling circumstances and that suppression of the statements was therefore required under Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution.[4] The state responded, in essence, that the exclusionary rule does not extend to probation-violation hearings, relying on federal case law under the Fifth Amendment.

At the hearing, Seaholm testified to the facts described above, and the parties largely relied on the legal arguments that they had made in their written submissions.[5] The trial court denied defendant's motion to suppress, concluding that, although he had made the statements to Seaholm under "compelling circumstances" and they would be inadmissible in a new criminal case, neither the state nor

---

[4] Article I, section 12, provides, in part, that "[n]o person shall be *** compelled in any criminal prosecution to testify against himself." The Fifth Amendment provides, in part, that "[n]o person shall be *** compelled in any criminal case to be a witness against himself[.]"

[5] Seaholm also testified that her office is in the same building as the sheriff's office, state police office, and county jail; that she wore a badge and a gun when she interviewed defendant; and that defendant was told that it would be a violation of his conditions of probation if he left without her permission. A copy of Seaholm's report and defendant's written admissions were admitted into evidence for purposes of the motion.

the federal constitution affected "the admissibility of [the challenged] statements in the probation violation proceeding."

The court then proceeded to hear the merits of the alleged probation violations. Defendant stipulated to Seaholm's testimony from the suppression hearing, and Seaholm further testified as to the basis for the state's allegations. Seaholm explained that the first violation was based on defendant's statements to her that his cellphone was at home and that a review of his Facebook account would not reveal any violations of his sex offender treatment rules; the second violation was based on Cook's report. Seaholm's violation report and defendant's written admissions were admitted into evidence, as was a DVD containing screen shots taken by Seaholm of images that she had found on defendant's Facebook account.

Cook also testified at the hearing, and the state entered a copy of his treatment violation report into evidence. Cook's report included a copy of defendant's treatment rules, which defendant had signed in January 2016. Cook testified that the rules all applied to defendant, that he had gone over all of them with defendant, and that defendant had initialed each rule as he read through them. Cook's report stated that defendant had violated Group Rule (GR) 1 ("Group members must openly discuss and report any past and present deviant behaviors."); GR 5 ("Group members are not to engage in any type of sexual contact[6] with another unless involved in an ongoing relationship with that other that has been approved."); GR 18 ("Group members may not possess, own or use pornographic literature, movies or videos and must avoid all adult entertainment businesses."[7]); and GR 26 ("Photos or objects of (or belonging to) minors, victims, or target range victims is prohibited."). In his testimony, Cook also stated that possession of a smartphone that has internet access violates GR 20 ("Group members may not own, possess or operate hard drives, discs or computers.").

---

[6] The rules provided that "[s]exual contact is considered to be any touching, viewing or discussion of sexual activities or sex organs for the purposes of engaging in sexual activities or sexual arousal."

[7] That rule also provided, "If there are questions about specifics, the definition of pornographic literature is to be discussed with group until members are clear about the nature and scope of various publications."

In response to questioning, Cook testified that sexting is considered deviant behavior and thus violates GR 1. He also testified that possession of nude photos, photos of male and female genitalia, and photos of anal penetration qualifies as possession of pornographic literature and therefore violates GR 18. As to GR 26, he testified that, given defendant's prior convictions, he was not allowed to have pictures of minors or adult females. Cook acknowledged that he had not viewed "any of the photos in question here."

In closing, the state argued that defendant's statements to Seaholm, that he had left his phone at home and that she would not find anything on his Facebook account, both of which turned out to be false, were sufficient to prove a violation of General Condition 11 (requiring probationers to "[p]romptly and truthfully answer all reasonable inquiries"). With regard to the second violation, the state emphasized Cook's testimony, including his testimony that he had gone over the treatment rules with defendant and defendant had initialed each one; the Facebook material contained on the DVD; and defendant's written statements, which the state pointed out, indicated that his behavior had been "going on going back six months while he's been on treatment" and that he "didn't think he was gonna get caught."

Defendant, in his closing, addressed each alleged violation in turn. Defendant first argued that his statement to Seaholm regarding his phone could not be a basis for a violation of General Condition 11 because it was "in response to a [request for] consent to search, not an inquiry." As to the second violation, defendant raised various challenges to the state's interpretation of the treatment rules, contending that his conduct did not constitute a violation of those rules "as written."[8] He also argued that GR 20 and 26 were overbroad—GR 20 because "[e]very single thing that * * * we use on a daily basis has hard drives," and there was "no

_____

[8] Specifically, he argued that "deviant behaviors," as used in GR 1, should be defined by reference to deviate sexual intercourse under ORS 163.305(1) (2015), which does not include sexting. He also argued that "sexual contact" for purposes of GR 5 requires physical touch, which did not occur in this case, and that there was no evidence that Cook had *not* approved defendant's relationship with the women with whom he had been sexting. He further argued that the photographs contained in Exhibit 4 do not qualify as pornographic "literature" and there was no evidence of movies or videos.

evidence regarding the phone, what type of phone, whether or not it contained a hard drive," and GR 26 because it would prohibit him from "having photographs of [virtually] any person living." Defendant did not deny that the cellphone and Facebook account were his or that he had engaged in the alleged conduct. Defendant did, however, point out that Cook "never actually saw any of the pictures, photographs, any of the things that are at question here."

At the conclusion of the hearing, the trial court concluded that defendant was in violation of both General Condition 11 and the special probation condition related to sex offender treatment. As to the latter, the court found that defendant failed to comply with the rules of his treatment program—specifically, GR 1, 5, 18, and 20—as required by that condition.[9] The court explained:

> "The smart—the internet access with smartphone, Dr. Cook testified that in and of itself would be a violation of group rules. So, *based on that alone, he would be in violation of the second allegation.*
>
> "Additionally, there's very graphic photographs involving sex, anal sex, human genitalia, breasts, all of which Dr. Cook described why that would violate Group Rules 1, 5, and 18. And so we'd find *based on his testimony and what's in State's 4* that it would violate Group [Rules] 1, 5, and 18."

(Emphases added.)

Regarding disposition, the state recommended revocation and 60 months' incarceration based on defendant's zero-tolerance stipulation.[10] Defendant, on the other hand, urged the court to continue probation, arguing that allowing defendant to remain on supervision would be beneficial to everyone: "[I]t would probably be better off for everyone if [defendant] continued into his treatment, continued on probation, continued being supervised and monitored and continued going through the steps required to help deal

---

[9] The court found that the state had not proved a violation of GR 26.

[10] Although the stipulation in the earlier judgment included a "75-month DOC sentence" upon revocation, the state and the trial court understood that the court could not impose a 75-month sentence because it exceeded the 60-month statutory maximum indeterminate sentence for a Class C felony.

with some of these underlying issues." Defense counsel noted that defendant had been "very straightforward with his probation officer," and that he had been compliant for 11 months on a "very, very tight probation," not missing meetings with his probation officer or Cook, recently passing a polygraph, and working full time. In other words, defense counsel told the court, "[h]e's pretty much doing all the things that we would want a probationer to do except [he] had a slip-up where he was, you know, eventually just brutally honest about what had been going on and what was causing it."

After confirming that defendant had in fact agreed to the zero-tolerance stipulation, the trial court ruled:

"Well, sir, the way—so, on your judgment, it says:

"'Defendant stipulates to revocation for the first non-financial proven probation violation with a 75-month DOC sentence with no AIP.'

"The reason I always inquire with the person for that is because they're agreeing if there's a proven probation violation that's not financial, they're agreeing to revocation. It pretty much—well, not pretty much, it ties the court's hands because there's already been agreement to that.

"So, I need to follow that."

Believing that it could not legally impose a 75-month sentence, *see* 299 Or App at 769 n 10, the court revoked defendant's probation and sentenced him to "48 months in prison with good time, credit for time served, but no AIP, with the balance of the 60 months on post-prison."

Defendant appeals, raising the two assignments of error noted above. For reasons that will become apparent, we consider them in reverse order, first considering defendant's second assignment of error: that the trial court erred in revoking defendant's probation based on his zero-tolerance stipulation.

We review a trial court's decision to revoke probation for abuse of discretion, unless an assignment of error raises a question of law, in which case we review that question for legal error. *State v. Hammond*, 218 Or App 574, 577, 180 P3d 137 (2008). "If the trial court's decision was within the

range of legally correct discretionary choices and produced a permissible, legally correct outcome, then the trial court did not abuse its discretion." *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000).

Defendant argues on appeal that the trial court here abused its discretion because it failed to *exercise* that discretion, relying instead on defendant's zero-tolerance stipulation as the basis for its revocation decision. Referencing *Barker v. Ireland*, 238 Or 1, 4, 392 P2d 769 (1964) ("Probation is not a matter of right, but a matter of discretion."), and OAR 213-010-0001 ("The decision to revoke probation is discretionary and may be exercised upon a finding that the offender has violated one or more of the conditions of probation, or that the offender has participated in new criminal activity."), defendant contends that relying on a "preexisting 'zero tolerance' agreement is inconsistent with the trial court's duty to exercise discretion." Thus, according to defendant, "[t]he court's decision 'flow[ed] from [the] mistaken legal premise' that it was required to revoke defendant's probation for any non-financial violation, so 'its decision [did] not fall within the range of legally correct choices and [did] not produce a permissible legally correct outcome.'" (Quoting *State v. Romero*, 236 Or App 640, 644, 237 P3d 894 (2010) (alterations by defendant).).

The state responds that defendant did not preserve that legal argument for our review. We agree and, for that reason, do not consider it. *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court ***."); *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008) (observing that the preservation requirement, which is "prudential in nature," is "well-settled in our jurisprudence"). To be sure, defendant told the trial court that defendant's conduct did not *warrant* revocation, and he urged the court to instead continue probation, arguing that it "would be better off for everyone" if defendant remained on supervision and in treatment. However, defendant did not argue to the trial court—as he does on appeal—that the court was *precluded*, as a legal matter, from relying on defendant's zero-tolerance stipulation as the basis for revoking his probation. Even after the court clearly expressed its intention to rely on the

stipulation, explaining that "it tie[d] the court's hands" and the court "need[ed] to follow" it, defendant did not inform the court of his contention that it was legally impermissible for the court to simply impose the stipulated sanction without exercising its discretion whether to do so. Had defendant raised that issue, the state could have responded, and the trial court would have had the opportunity to correct its error, if correction were warranted. *Peeples*, 345 Or at 219 (explaining that the preservation rule "ensures fairness to an opposing party, by permitting the opposing party to respond to a contention and by otherwise not taking the opposing party by surprise" and "gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal"). Thus, we reject defendant's second assignment of error for lack of preservation.[11]

We return to defendant's first assignment of error. As noted, in that assignment, he asserts that the trial court erred in denying his motion to suppress the statements he made to Seaholm, which raises the significant and as-yet-unresolved question whether evidence obtained in violation of Article I, section 12, is admissible in a probation-violation proceeding.[12] We do not, however, reach that question, because, as we next explain, we conclude that, even assuming that the trial court erred in admitting defendant's statements, that error was unlikely to have affected the outcome of defendant's case.

We have often recognized that, notwithstanding trial court error, we may not reverse a judgment if the error was harmless. Or Const, Art VII (Amended), § 3. And, under our Article VII (Amended), section 3, case law, an error is harmless if there is "little likelihood" that it affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). As the Supreme Court has explained, "[t]he correct focus of

---

[11] Defendant does not request that we exercise our discretion to review the error as plain error. *See* ORAP 5.45(1) (providing for discretionary plain error review).

[12] Defendant does not reassert his argument that his statements were inadmissible under the Fifth Amendment; indeed, he acknowledges that he conceded that point at the suppression hearing below.

[that inquiry] is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a fact-finder, would regard the evidence of guilt as substantial and compelling." *Id.* In determining whether a trial court's error was harmless, we consider, among other factors, "the nature of the erroneously admitted evidence in the context of other evidence on the same issue." *State v. Maiden*, 222 Or App 9, 13, 191 P3d 803 (2008), *rev den*, 345 Or 618 (2009); *see Davis*, 336 Or at 33-34 (considering whether a factfinder would regard the evidence as duplicative, cumulative, or unhelpful in its deliberations). That is, although we do not independently weigh the evidence, we nonetheless "consider[] the significance of challenged evidence in light of the presence or absence of other overwhelming evidence of a defendant's guilt." *State v. Stewart*, 270 Or App 333, 340, 347 P3d 1060, *rev den*, 357 Or 743 (2015) (internal quotation marks omitted). "[I]f the erroneously admitted testimony is merely cumulative of other evidence that established the same fact, then the evidence is less likely to have affected the verdict. Similarly, the less substantial the evidence of guilt, the more likely it is that an error affected the result." *State v. Kayfes*, 213 Or App 543, 555-56, 162 P3d 308, *rev den*, 343 Or 690 (2007) (internal citations omitted). We also consider "the importance of the erroneously admitted evidence to a party's theory of the case." *Maiden*, 222 Or App at 13 (citing *Davis,* 336 Or at 34).

Thus, the analysis that Article VII (Amended), section 3, would require if it applied to defendant's appeal is clear. What is less clear, however, is whether that provision applies to appeals such as this one, where the argument is not that the alleged error may have affected the verdict in defendant's case, but that it may have formed the basis of the trial court's decision to revoke defendant's probation. Defendant assumes in his briefing that it does apply, but he argues that the error was not harmless. In its response, the state does not address whether Article VII (Amended), section 3, applies; in fact, the state does not argue harmlessness at all. We conclude, however, that, like the question regarding Article I, section 12, we need not reach that question, because our case law regarding probation revocation appeals guides our disposition in this case.

Specifically, notwithstanding trial court error, we will affirm a judgment revoking probation if we can determine that the defendant was not prejudiced by that error. *State v. Johnson*, 13 Or App 79, 508 P2d 840 (1973); *see also* ORS 19.415(2) (prohibiting reversal of a judgment on appeal "except for error substantially affecting the rights of a party"). In *Johnson,* we concluded that the trial court had erroneously accepted a nonunanimous verdict in a six-person jury trial; as a result, we reversed the defendant's conviction for a misdemeanor firearm offense. *Id*. at 81. We affirmed, however, the trial court's revocation of the defendant's felony probation based upon the same conduct. *Id*. at 81-82. We reasoned that, although the trial court could not rely on the defendant's erroneous conviction as a basis for finding a probation violation, it was free to rely on the facts underlying that conviction to determine that the defendant had violated the law and, therefore, the conditions of his probation. *Id*. And, because that evidence was clear—indeed, defense counsel had acknowledged the defendant's conduct at his probation hearing—and the trial court had not limited its reason for revoking probation to his erroneous conviction, we determined that the trial court had not erred in revoking the defendant's probation. *Id*.

In the years since *Johnson*, we have often based our decision whether to reverse a judgment revoking probation on whether an error in the course of the revocation proceedings may have been "prejudicial," as opposed to whether the error was "harmless" under constitutional standards.[13] For example, in *State v. Milnes*, 256 Or App 701, 711, 301 P3d 966 (2013), we noted that the defendant's erroneous conviction for felon in possession of a firearm "also formed the basis, in part, for the court's revocation of defendant's probation," and

---

[13] One notable exception is when the defendant's due process rights have been violated or the trial court committed other federal "structural error" in the course of probation proceedings. In those circumstances, we have held that the error was not harmless under the federal standard, *see State v. Terry*, 240 Or App 330, 337, 252 P3d 332 (2011) (admission of hearsay at probation hearing violated due process), or that the presence of structural error precluded reliance on a harmless error analysis, *see State v. Blanchard*, 236 Or App 472, 476, 236 P3d 845 (2010) (court's denial of defendant's request to represent himself violated defendant's Sixth Amendment right to self-representation). Here, as noted, defendant no longer argues that the admission of his statements violated the federal constitution.

that the trial court had "not indicate[d] whether it would have revoked defendant's probation or imposed the same sentence in the absence of that conviction." Accordingly, we reversed the probation revocation judgment and remanded to the trial court for reconsideration in light of the reversal of the defendant's conviction. *Id*. (citing in support for that disposition, *State v. McMilian,* 191 Or App 62, 69, 80 P3d 538 (2003), *rev den,* 337 Or 248 (2004)).

Similarly, in *State v. Rivera-Waddle*, 279 Or App 274, 280-81, 379 P3d 820 (2016), we reversed a judgment revoking probation and remanded to the trial court for reconsideration. That was because, although the court had erroneously found the defendant in violation of probation on an improper ground, there remained four other potentially valid bases for revocation. *Id*. (citing *State v. Mast*, 109 Or App 485, 486, 819 P2d 1392 (1991) (reversing and remanding for reconsideration because it was "unclear" whether trial court had relied on an improper basis for revoking probation)). Given those precedents, it is apparent to us that, to determine the proper disposition of defendant's appeal in light of his assertion that the trial court erred in admitting his statements, we must evaluate whether any such error could have prejudiced defendant in his probation case.

Ultimately, however, there appears to be little distinction between an assessment whether a trial court error was "prejudicial" to a probationer and an assessment of "harmlessness" in an appeal from a judgment of conviction. And, because defendant's arguments regarding harmlessness provide a helpful context for addressing prejudice, we consider those arguments for their persuasive value regarding prejudice. As we explain below, however, we are not persuaded. That is, we ultimately conclude that defendant was not prejudiced by any error in admitting his statements to Seaholm; we therefore affirm.

Defendant contends that the erroneous admission of the evidence here was reversible error "because defendant's statements were necessary for [the first violation] and the trial court did not say whether it would have revoked probation without that violation." (Boldface omitted.) We readily acknowledge that the admission of defendant's statements

to Seaholm would have been prejudicial with respect to the court's finding of the first violation—defendant's failure to truthfully answer Seaholm's questions. Indeed, that violation was predicated solely on defendant's statements—both his verbal statements as recounted by Seaholm in her report and testimony and his written statement admitting that he had lied.

We disagree, however, with defendant's assertion, citing *Milnes*, that the judgment must consequently be reversed "because the court did not say whether it would have revoked probation without that violation." In contrast to the circumstances present in *Milnes* and the other cases discussed above, here it is clear that the trial court *would* have revoked defendant's probation based only on the second violation, which concerned defendant's failure to comply with the special condition of probation. As detailed above, the court concluded that it was *required*, as a result of defendant's zero-tolerance stipulation, to revoke defendant's probation upon his first nonfinancial violation of his probation conditions; moreover, we have now rejected defendant's challenge to that conclusion. 299 Or App at 770-72. Further, there is no dispute that the second violation found by the court—defendant's failure to comply with the written rules and directives of his sex offender treatment program—was nonfinancial. Thus, unlike in *Milnes*, there is no uncertainty whether the court would have revoked defendant's probation based only on that violation—it would have done so because it believed that the parties' stipulation required that outcome.

The question here, therefore, reduces to whether any error in admitting defendant's statements was prejudicial with regard to *that* basis for revoking defendant's probation—that is, that he had failed to comply with the rules of his sex offender treatment program. Defendant suggests that it *was* prejudicial; he argues that the admitted statements "were highly probative" of that violation "because his initial statements—denying that he had his phone with him or that Seaholm would find anything on his Facebook account—reflected consciousness of guilt, and his signed confession was overwhelming evidence of guilt."

We disagree. Defendant's written statements—admitting to sexting various women over a period of several months—were, of course, pertinent to a fundamental issue in the case—whether defendant had violated the rules of his sex offender treatment program. But, the court also received ample other and highly probative evidence on that issue. Significantly, defendant sought to suppress *only* his statements (as noted above, he moved to suppress "all statements made by [defendant] to his Probation Officer"); he did not contend—and does not argue to us—that the trial court also was required to suppress any derivative evidence. That evidence includes the following.

First, Seaholm's report and her subsequent testimony informed the court that defendant's Facebook account showed pictures of penises and female genitalia, masturbation, and anal penetration, as well as the sharing of nude photos between defendant and several women. The evidence also includes a DVD of screenshots taken by Seaholm of defendant's Facebook account, which the court found contained "very graphic photographs involving sex, anal sex, human genitalia, [and] breasts." Seaholm also stated that there were videos on defendant's phone of sexual conduct, specifically, "females touching genitalia."[14] Cook testified that that conduct—sexting, sending sexually explicit photos of male and female genitalia, and possessing nude photos, photos of anal penetration, and photos of genitalia—violated GR 1, 5, and 18, and that possession of a smartphone with internet access was a violation of GR 20. Cook also testified that those rules were applicable to defendant and that defendant had initialed each one, indicating his understanding of the rules.

In short, there was overwhelming evidence of defendant's failure to comply with his treatment rules—without considering defendant's inculpatory statements—and there is little likelihood that suppression of those statements would have assisted defendant. *See, e.g.*, *Harding*, 221 Or App at 302 (concluding that there was little likelihood that the defendant's inculpatory statements would have affected

---

[14] Defendant does not dispute that the phone Seaholm obtained from Freeman belonged to him.

the jury's verdict "in light of the overwhelming evidence of defendant's involvement in the crimes of which he was convicted"); *cf. State v. Villanueva-Villanueva*, 262 App 530, 535, 325 P3d 783 (2014) (concluding that erroneously admitted hearsay evidence was not harmless because "there was no overwhelming evidence of guilt for defendant's convictions").

Further, because this case involved a court hearing as opposed to a jury trial, we also have the benefit of the factfinder's evaluation of the evidence. Although the state, in closing, referred briefly to defendant's written admissions to show that his sexting conduct had been "going on going back six months while he's been on treatment," it appears that defendant's statements did not weigh at all in the court's ultimate determination. In explaining its decision, the court first found, based on Cook's testimony, that defendant's possession of a smartphone with internet access was *itself* sufficient to establish the second probation violation.[15] The court next explicitly stated that its finding that defendant also failed to comply with other rules of his sex offender treatment program (specifically, GR 1, 5, and 18) was based on Cook's testimony and the material on the DVD. Thus, although defendant's written statements were qualitatively different from the other evidence supporting the second probation violation, there is nothing in the record to suggest that the trial court relied on those statements as a basis for its decision.

Accordingly, viewing the record as a whole, we conclude that, even if the trial court erred in admitting defendant's statements, that error could not have affected the court's determination that defendant had violated the special condition of his probation or its ultimate decision to revoke defendant's probation, and, consequently, defendant was not prejudiced by the asserted error.

Affirmed.

---

[15] Although defendant argued to the trial court—in the context of arguing that GR 20 was overbroad—that "there was no evidence regarding the phone, what type of phone, whether or not it contained a hard drive," he does not contend on appeal that the evidence was legally insufficient for the court to have found that his cellphone had internet access, nor that the court erred as a matter of law in accepting Cook's opinion that possession of such a phone violated GR 20.